IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| BLOUNT PRIDE, INC., *a 501(c)3 nonprofit organization,* and MATTHEW LOVEGOOD, | ) ) ) | **Case No.** |
| PLAINTIFFS, | ) ) ) | |
| | ) ) | **COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42** |
| v. | ) ) ) ) | **U.S.C. § 1983** |
| RYAN K. DESMOND, *in his individual and official capacity as the District Attorney General of Blount County, Tennessee,* JAMES BERRONG, *in his official capacity as Blount County Sheriff,* TONY CRISP, *in his official capacity as Maryville Police Chief,* DAVID CARSWELL, *in his official capacity as Alcoa Police Chief,* and JONATHAN SKRMETTI, *in his official capacity as Attorney General of Tennessee,* DEFENDANTS. | ) ) ) ) ) ) | |

---

**VERIFIED COMPLAINT**

---

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiffs Blount Pride, Inc. and Matthew Lovegood, by and through their designated attorneys, for their Complaint allege as follows:

## I. NATURE OF THE ACTION

1.      This action is brought under 42 U.S.C. § 1983 and is premised on the First, and Fourteenth Amendments to the United States Constitution and Tenn. Code Ann. § 1-3-121.

## II. SUBJECT MATTER AND JURISDICTION

2.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 on the grounds that the claims asserted herein arise under U.S.C. §§ 1983 and 1988 and supplemental jurisdiction over the Plaintiffs' state law claim under 28 U.S.C. § 1367.

3.      Venue is proper in this Court and Division pursuant to 28 U.S.C. § 1391 on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III. THE PARTIES AND PERSONAL JURISDICTION

4.      Plaintiff Blount Pride, Inc. is a registered 501(c)(3) non-profit organization based in Blount County, Tennessee. Blount Pride organizes and hosts an annual Pride festival in Blount County. The festival includes vendors, events, and entertainment, including drag performances by a number of individual artists. The third annual Blount Pride festival is scheduled to begin September 2, 2023.

5.      Plaintiff Matthew Lovegood is a drag artist who performs under the name "Flamy Grant." They have been performing drag for more than three (3) years, and are scheduled to perform at the Blount Pride's 2023 festival.

6.      Defendant Ryan K. Desmond is the District Attorney General of Blount County, Tennessee. He is responsible for prosecuting all violations of state criminal statutes, including Tenn. Code Ann. § 7-51-1407, occurring in the Fifth Judicial District of Tennessee, which is coterminous with Blount County. *See* Tenn. Code Ann. § 8-7-103(1).

7.      Defendant James Berrong is the Blount County Sheriff. Blount County comprises the Fifth Judicial District of Tennessee where Defendant Desmond is the elected District Attorney. Under Tenn. Code Ann. § 8-8-201, it is the sheriff's duty to "[t]ake charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep

2

them personally..." It is the sheriff's duty to receive and hold those committed to his custody pursuant to an arrest under Tenn. Code Ann. § 7-51-1407, *et seq*. Defendant Berrong is sued in his official capacity.

8. Defendant Tony Crisp is the Maryville City Police Chief. Maryville, Tennessee is located within Blount County and the Fifth Judicial District of Tennessee where Defendant Desmond is the elected District Attorney. It is the duty of the chief of police to, among other duties, "[p]revent the commission of crime, violations of law and of the city ordinances" *see* Tenn. Code Ann. § 6-21-602(3), including violations of Tenn. Code Ann. §7-51-1407. The chief of police is charged with the duty to prosecute violations of criminal law in court and seek warrants and serve the same. *See* Tenn. Code Ann. §6-21-604. Defendant Crisp is sued in his official capacity.

9. Defendant David Carswell is the Alcoa Police Chief. Alcoa City is located within Blount County and the Fifth Judicial District of Tennessee where Defendant Desmond is the elected District Attorney. It is the duty of the chief of police to, among other duties, "[p]revent the commission of crime, violations of law and of the city ordinances" *see* Tenn. Code Ann. § 6-21-602(3), including violations of Tenn. Code Ann. §7-51-1407. The chief of police is charged with the duty to prosecute violations of criminal law in court and seek warrants and serve the same. *See* Tenn. Code Ann. §6-21-604. Defendant Carswell is sued in his official capacity.

10. Defendant Jonathan Skrmetti is the Attorney General of Tennessee and Reporter of the State of Tennessee. The Attorney General/Reporter is headquartered at 500 Dr. Martin Luther King Jr. Under state law, he is charged with defending the constitutionality of Tennessee statutes, *see* Tenn. Code Ann. § 8-6-109(b)(9)), and is entitled to notice and to be heard in actions seeking a declaratory judgment as to the constitutionality of a statewide statute, *see* Tenn. Code Ann. § 29-14-107(b). Further, he has exclusive authority to prosecute criminal violations in Tennessee's

appellate courts. *See* Tenn. Code Ann. § 8-6-109(b)(2); *State v. Simmons*, 610 S.W.2d 141, 142 (Tenn. Crim. App. 1980). Defendant Skrmetti is sued in his official capacity.

## IV. FACTUAL ALLEGATIONS

**Tennessee Legislators Fight to Prevent Family Friendly Drag Show**

11.    In October of 2022, Jackson Pride planned to host its third annual pride festival celebrating the diversity of the LGBTQ+ community in Jackson and West Tennessee.

12.    As a part of the festival, Jackson Pride planned a family friendly, appropriate-for-all ages drag show to be performed in Conger Park in Jackson.

13.    Drag is defined as "clothing more conventionally worn by the other sex, especially exaggeratedly feminine clothing, makeup, and hair adopted by a man."[1] Drag is usually performed as entertainment and often includes comedy, singing, dancing, lip-syncing, or all of the above.

14.    Drag is not a new art form; nor is it inherently – or even frequently – indecent. Drag has been present in western culture dating back to Ancient Greek theatrical productions, where women were often not permitted to perform onstage or become actors. Instead, male actors would don women's attire and perform the female roles.[2]

15.    The earliest productions of William Shakespeare's plays also featured male actors in drag playing the female roles.[3]

16.    By the 1800s, "male or female impersonation" was known as "drag."

17.    The vaudeville shows of the late 1800s and early 1900s popularized drag, or

---

[1] *Drag*, OxfordLearnersDictionary.com, https://www.oxfordlearnersdictionaries.com/us/definition/english/drag_1 (last visited March 25, 2023).

[2] Ken Gewertz, *When Men Were Men (and Women, Too)*, The Harvard Gazette (July 17, 2003), https://news.harvard.edu/gazette/story/2003/07/when-men-were-men-and-women-too/

[3] Lucas Garcia, *Gender on Shakespeare's Stage: A Brief History*, Writer's Theatre, (November 21, 2018), https://www.writerstheatre.org/blog/gender-shakespeares-stage-history/

4

"female impersonators."[4] One of the most well-known vaudeville female impersonators, Julian Eltinge, made his first appearance on Broadway in drag in 1904.[5]

18. By 1927, drag had become specifically linked with the LGBTQ+ community, and by the 1950s, drag performers began entertaining in bars and spaces that specifically catered to gay people. In the decades that followed, drag solidified itself as an art form.[6]

19. Although drag is still centered around and holds special historical significance for the LGBTQ+ community, the art form is now definitively a part of mainstream culture. One is as likely to find straight people at a drag show as gay people. RuPaul's Drag Race – a drag competition television show – has won seven Emmy Awards and is currently in its fifteenth season. The show has spinoffs in the UK, Australia, Chile, Thailand, Canada, Italy, Spain, and elsewhere.

20. Like all forms of performance art, drag encompasses a vast spectrum of expression. Every drag performer makes unique choices about attire, choreography, comedy, and music, which can range from a performer in a floor-length gown lip-syncing to Celine Dion songs and making G-rated puns, to the Rocky Horror Picture Show, to sexual innuendo and the kind of dancing one could expect to see at a Taylor Swift or Miley Cyrus concert.

21. Modern drag performances typically do not contain nudity. More often than not, drag performers wear more clothing than one would expect to see at a public beach, and many drag shows are intended to be appropriate for all ages.

22. According to Bella DuBalle, the host of the 2022 Jackson Pride drag show, the event

---

[4] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.

[5] Michael F. Moore, Drag! Male and Female Impersonators on Stage, Screen, and Television: An Illustrated World History, McFarland & Company, 1994.

[6] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.

5

was intended to be "family-friendly and appropriate for people of all ages." Still, DuBalle acknowledged that not every parent is comfortable with even G-rated drag, and that families should make the choice that is right for them.[7]

23.     In spite of the benign content of the Jackson Pride drag show, some members of the local community took issue with the event being held in a public park. After public backlash, city officials and members of the Pride Committee agreed to move the event indoors. But for some people, this still was not enough.[8]

24.     Tennessee state Representative Chris Todd, along with state Senator Ed Jackson and members of the First United Methodist Church, filed a lawsuit in Madison County chancery court, asking the court to declare the drag show a public nuisance, and to permanently enjoin the City of Jackson from granting a permit to Jackson Pride organizers.

25.     In the complaint, Plaintiffs argued that a drag show, no matter how benign its contents, is an "adult cabaret," and therefore should not be permitted within 1,000 feet of a church.

26.     With the date of the event just around the corner, Jackson Pride agreed to make the event age-restricted to those 18 years of age and older. Jackson Pride maintained that the event was family friendly and appropriate for all ages.[9]

27.     In his comments to the press, Rep. Todd stated, "This is not something we agree with and it's not something our children need to be exposed to . . . It's been about protecting the

---

[7] State Rep, Performer Discuss Controversy of Jackson Pride, WBBJ News, (September 21, 2022) https://www.wbbjtv.com/2022/09/21/state-rep-performer-discuss-controversy-of-jackson-pride-drag-show/

[8] Jackson Pride organizer expresses 'joy,' Rep. Todd calls a 'win' with drag show ruling, Jackson Sun, (October 7, 2022), https://www.jacksonsun.com/story/news/2022/10/07/jackson-pride-tn-2022-drag-show-age-18-and-older/69547945007/

[9] *Id.*

kids in our community from something that is harmful to them. It's not age appropriate."[10]

28.     Although Jackson Pride organizers had repeatedly stressed that the drag show was thoroughly vetted to be "family-friendly content" with no lewd or sexual content allowed, Rep. Todd insisted that the drag performances were "clearly meant to groom and recruit children to this lifestyle . . .that is child abuse and we will not have that here."[11]

29.     When pressed about how he knew it was child abuse if he had not actually inquired about the show's contents, Rep. Todd repeated, "this type of performance and its content is the child abuse."[12]

30.     Rep. Todd also stated, "I think moving forward, we anticipate that any kind of consideration of a drag queen event be nonexistent, and that they would realize this community is not the place for that."[13]

31.     Rep. Todd's actions in Jackson were an unconstitutional government infringement on speech and expression protected by the First Amendment.

32.     Tennessee already has state laws prohibiting obscenity or indecent exposure in front of minors. Rep. Todd was not seeking to enforce those laws. Instead, he sought to prevent *any* drag entertainment, no matter how G-rated, from being performed in front of children, merely because he personally disagrees with the content.

**In Response to Jackson Pride, Tennessee Legislators Pass a New Law**

33.     After violating the First Amendment rights of Jackson Pride, Rep. Todd "was asked

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

to come up with legislation that would make this much more clear" – that drag performances in front of children are a violation of Tennessee law.

34.     In January of 2023, Rep. Todd introduced House Bill 0009, which would amend T.C.A. § 7-51-1407 to ban any "adult cabaret performance" in front of children that "appealed to the prurient interests" of minors.

35.     The law was later amended to cross-reference the definition of "harmful to minors" from T.C.A § 39-17-901, which regulates in part the sale and distribution of pornography and other sexually explicit content to minors.

36.     When asked on the House floor why this law was necessary if such conduct was already illegal to perform in front of children, Rep. Todd stated that the bill was intended to cover conduct like that which he "dealt with in my own community this past year."[14]

37.     When asked on the House floor if he knew of any instances of children being harmed by "adult cabaret performances," Rep. Todd recounted how his lawsuit forced Jackson Pride to move the family-friendly drag show indoors and to apply age restrictions, and explained, "that's exactly how this bill is structured. It doesn't prevent those performances, but it certainly says they must not be held in front of minors, and we intend to uphold that and expect law enforcement across this great state to uphold that principle and to uphold what we pass here in this legislature."[15]

38.     Rep. Todd's bill did pass the legislature, and was signed into law by Governor Lee on February 27, 2023.

_____

[14] 113th General Assembly, 9th Legislative Day, (February 23, 2023) House Floor Session - 9th Legislative Day (granicus.com)

[15] *Id.*

39.     The final text of the bill, which was set to take effect April 1, 2023, reads as follows:

**T.C.A. § 7-51-1407**

(c)(1) It is an offense for a person to perform adult cabaret entertainment:

(A) On public property; or

(B) In a location where the adult cabaret entertainment could be viewed by a person who is not an adult.

(3) A first offense for a violation of subdivision (c)(1) is a Class A misdemeanor, and a second or subsequent such offense is a Class E felony.

**T.C.A. § 7-51-1401**

(3) "Adult cabaret entertainment":

(A) Means adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901 and that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers; and

(B) Includes a single performance or multiple performances by an entertainer;

**T.C.A § 39-17-901**

(6) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:

(A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;

(B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) Taken as whole lacks serious literary, artistic, political or scientific values for minors;

(2) "Community" means the judicial district, as defined in § 16-2-506, in which a violation is alleged to have occurred.

**Friends of George's, Inc. Challenges the Act in Federal Court**

40.     In March of 2023, a drag-centric theatre company, Friends of George's, Inc., (FOG) filed suit in the Western District alleging that the Act is unconstitutional. FOG sought injunctive

relief against Shelby County District Attorney General, Steve Mulroy.

41.     FOG alleged that the Act is facially unconstitutional under the First Amendment for several reasons.

42.     First, the statute is not content-neutral and is therefore subject to strict scrutiny. It prohibits protected speech based on the identity of the speaker. *City of Austin v. Reagan Nat'l Adver. Of Austin, LLC.*, 142 S. Ct. 1464, 1471 (2022).

43.     "[L]aws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys. Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015).

44.     There are two possible ways to read the definition of "adult cabaret entertainment," and both interpretations define the prohibited conduct – at least in part – by the identity of the speaker. It is unclear if "adult cabaret entertainment" includes:

>   1)  conduct that is harmful to minors, and that separately also includes conduct that features "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers;"
>
>   2)  *or* if the conduct that is "harmful to minors" *must also include* one of the delineated entertainers.

45.     Either reading of the statute is unconstitutional. The first reading of the statute includes any performance by a male or female impersonator – regardless of content.. The law "sweeps in mainstream artistic performances" as well as subjects the performer to prosecution based on "the presentation of a single performance." Those two factors are precisely what the Sixth Circuit has held "doomed the statutes . . . which were invalidated by this and other circuit courts"

10

on First Amendment grounds. *Entm't Prods., Inc. v. Shelby Cty.,* 588 F.3d 372, 386 (6th Cir. 2009).

46. Under this reading of the law, a drag queen wearing a mini skirt and a cropped top and dancing in front of children violates this statute, but a Tennessee Titans cheerleader wearing precisely the same outfit doing precisely the same routine does not, because she is not a "female impersonator." Thus, the prohibited speech is defined by the identity of the drag performer – and the message he conveys. That is a content-based restriction on speech protected by the First Amendment.

47. The alternative reading of the statute is no better. If the prohibited conduct *must* include one of the defined performers, then a woman in a dress who publicly performs material "harmful to minors" cannot be charged under this statute, but a man in a dress engaged in the exact same conduct could be. Once again, the restricted speech is defined in significant part by the speaker, and the message that speaker conveys.

48. Second, the statute is so broad, it is certain to have a chilling effect on protected speech.

49. The law prohibits such performances, "in a location where the adult cabaret entertainment could be viewed by a person who is not an adult."

50. There are no defined "locations" in the law. The prohibition is not limited to commercial establishments or paid performances, which means that a drag performer could be arrested for providing free entertainment at a family member's birthday party held *at that family member's house*, as long as children are present.

51. If a restaurant hosts an 18+ drag brunch, and children walk by and see it through the windows, nothing prevents the drag performers from being charged under this statute.

52. There are no affirmative defenses included in the law, and no exceptions for

11

minors who see drag shows with parental consent.

53.     Additionally, T.C.A. § 39-17-901, which defines "harmful to minors" also defines "community" as "the judicial district, as defined in § 16-2-506, in which a violation is alleged to have occurred."

54.     This means that there are thirty-one (31) potential definitions of prohibited conduct. There is no way for a performer to know what is and is not specifically prohibited from district to district.

55.     There is no way for a citizen of Tennessee to be on notice for what conduct could violate this law – and possibly subject them to felony charges.

56.     "The severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images. As a practical matter, this increased deterrent effect, coupled with the risk of discriminatory enforcement of vague regulations, poses greater U.S. Const. amend. I concerns than those implicated by certain civil regulations." *Reno v. ACLU*, 521 U.S. 844, 872 (1997).

57.     The law also opens up any establishment – or even private home – that hosts drag shows to police raids, so law enforcement can be certain that no children are present at the event.

58.     Indeed, even after Jackson Pride agreed to move their family-friendly drag show indoors and restrict attendance to 18+, Rep. Todd told press that "the event will be carefully monitored by the Jackson Police Department to 'watch for' these violations."[16]

59.     The fear of felony charges and the uncertainty about what *could* give rise to those charges will certainly keep citizens of Tennessee from engaging in protected speech – even speech

---

[16] Jackson Pride organizer expresses 'joy,' Rep. Todd calls a 'win' with drag show ruling, Jackson Sun, (October 7, 2022).

that might fall entirely outside the purview of the statute.

60. The resulting chilling effect has already been felt across the state of Tennessee, particularly by the LGBTQ+ community, for whom drag is a central and vital part of their history, culture, and celebration of identity.

61. The organizers of Knoxville Pride stated that they intend to cancel their annual October Pride events for the safety of their employees.

62. This law, which specifically targets drag performances, threatens to return the LGBTQ+ community to the days when they had to hide their identity and their art behind blacked-out windows.

63. After a hearing in which the court heard arguments from both sides, Judge Parker issued a temporary restraining order enjoining defendants from enforcing the Act. A bench trial was scheduled for May 22nd, 2023.

**A Federal Judge Declares the Act Unconstitutional**

64. On June 2, 2023, after a full trial on the merits, the court issued its Findings of Fact and Conclusions of Law in *Friends of George's v. Mulroy*. The court's findings are attached hereto as **EXHIBIT 1.**

65. In its 70-page analysis, the court found that the Act is a content-based, viewpoint discriminatory regulation, and that the Act is not narrowly tailored to achieve Tennessee's compelling interests. Additionally, the court concluded that the Act is unconstitutionally vague and overbroad.

66. The court granted FOG both declaratory and injunctive relief against DA Mulroy in his official capacity. The court declared that the Adult Entertainment Act is an unconstitutional restriction on free speech, and permanently enjoined DA Mulroy from enforcing the Act. The

court's Judgment is attached hereto as **EXHIBIT 2.**

67. District Attorney Mulroy's appeal is currently before the Sixth Circuit.

**District Attorney General Ryan K. Desmond Threatens Enforcement of the Act Against Plaintiffs.**

68. Blount Pride, Inc., is a 501(c)3 nonprofit that organizes and hosts an annual Pride festival in celebration of the LGBTQ+ community. The festival hosts live entertainment, including drag performances by individual entertainers. Blount Pride's third annual festival is scheduled to begin Saturday, September 2, 2023.

69. Blount Pride currently has no age restrictions on any event, and there are events specifically planned for children, so individuals under eighteen (18) years of age will be present on the premises.

70. Matthew Lovegood is a drag artist who performs under the name "Flamy Grant." Plaintiff Lovegood is scheduled to perform in drag at Blount Pride this year.

71. On Tuesday, August 29, just four (4) days before the festival, Blount Pride received an email from District Attorney General Ryan Desmond which stated in part, "Please see the attached notice regarding my office's prosecutorial position relative to the Adult Entertainment Act." The accompanying 3-page letter is attached hereto as **EXHIBIT 3.**

72. In the letter, Defendant Desmond asserts that he intends to enforce the Act, despite a federal court ruling in the Western District of Tennessee declaring the Act unconstitutional.

73. Upon information and belief, Defendant Desmond's decision to enforce the Act relies in part on the opinion or advice of Defendant Attorney General Jonathan Skrmetti that the district court's order applies to "only the District Attorney for the 30th Judicial District." *See* Ex. 3 at 1.

74. Defendant Desmond states that the letter is a direct response to "a coming event

14

planned for September 2, 2023, that is marketing itself in a manner which raises concerns that the event may violate certain criminal statutes within the State of Tennessee," and that the letter aims to "put potential parties on notice of possible ramifications of criminal conduct." Ex. 3 at 1.

75.    Blount Pride's promotional materials include social media posts on Facebook and Instagram, examples of which are attached hereto as **EXHIBIT 4**. The posts include lists of vendors, planned entertainment, and photos of entertainers, including several photos of Plaintiff Lovegood's drag persona, "Flamy Grant." None of the posts are sexual in nature.

76.    Defendant Desmond also addressed the letter to three law enforcement heads – Defendants Blount County Sheriff James Berrong, Alcoa Police Chief David Carswell, and Maryville Police Chief Tony Crisp (collectively the "Municipal Defendants").

77.    Defendant Desmond's decision to include these law enforcement officers in his letter empowers and encourages police to enforce the unconstitutional Act. This act chills the speech of Plaintiffs and any other person in Blount County who is subject to Defendant Desmond's jurisdiction.

78.    Worse, the letter specifically targets Plaintiffs for enforcement. The only other recipients are representatives of the entities where the Pride festival is being held – Maryville College and the cities of Maryville and Alcoa.

79.    Upon information and belief, on August 28, 2023, Defendant Crisp contacted Maryville College, requesting Maryville College provide a copy of the contract between Plaintiff Blount Pride and Maryville College

80.    The next day, August 29, 2023, Defendant Crisp called Bryan F. Coker, President of Maryville College, notifying Mr. Coker of Defendant Desmond's letter and asking to arrange a meeting between Defendant Desmond, Maryville College, and himself. Maryville College referred

15

Defendant Crisp to Maryville College's legal counsel. Upon information and belief, counsel for Maryville College was subsequently contacted by Defendants Desmond and Crisp later that day, August 29, 2023.

81. During the call on August 29, 2023, Defendant Crisp also notified Mr. Coker that officials at Maryville College, including Mr. Coker, could face prosecution for a misdemeanor if they violated the Act.

82. While Defendant Desmond claims that "we do not prematurely evaluate the facts or evidence related to potential investigations," he also states that his office conducted a "diligent search" to find a way to seek a prior restraint against Blount Pride:

> It should be noted at this point that a diligent search of relevant statutory authority has revealed no mechanism under which a District Attorney General in the State of Tennessee could petition for a temporary injunction to enjoin an individual or group from organizing and holding an event that would be violative of the AEA.

Ex. 3 at 2.

83. In other words, he tried to find a way to violate Plaintiffs' First Amendment rights. When that failed, he opted instead to send a threatening letter to Plaintiffs and the host site of their event.

84. Had Defendant Desmond merely wished to notify the public that he intends to enforce the Act, he could have issued a public statement to that effect. Instead, he sent a letter targeting Blount Pride and the drag artists who are scheduled to perform. The letter, and Defendants Crisp and Desmond's further attempts at intimidation, are a naked attempt to chill Plaintiffs' speech and expression in retaliation to Blount Pride's social media posts.

**The _Friends of Georges_ Declaration applies to the Defendant here.**

85. In _Friends of Georges, Inc. v. Mulroy_, No. 223CV02163TLPTMP, 2023 WL 3790583, at *32 (W.D. Tenn. June 2, 2023), the Western District of Tennessee ruled that it

"**HOLDS** and **DECLARES** that the Adult Entertainment Act is an **UNCONSTITUTIONAL** restriction on speech." *Id.* "[T]he AEA violates the First Amendment as incorporated to Tennessee by the Fourteenth Amendment, and it cannot be enforced consistently with the supreme law of the land: the United States Constitution[,]" the Court explained. *Id.* Importantly, this ruling was also issued against "Defendant Steven J. Mulroy in his official capacity as District Attorney General of Shelby County[.]" *Id.* at *7.

86.     The U.S. Supreme Court has made clear that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). "As such, it is no different from a suit against the State itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent")). Put another way: "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. at 166.

87.     The import of this precedent is that the District Attorney of Shelby County—in his official capacity—is "in all respects other than name" the same as the District Attorney here. *Id.* In their official capacities, both are really the State of Tennessee as an "entity[,]" so both cases present "a suit against the State itself[,]" rather than a suit against any defendant individually. *See Will*, 491 U.S. at 71. In *Friends of Georges*, the State of Tennessee already litigated and lost the exact issue presented here, too, so the *Friends of Georges* declaration applies to this case. The State of Tennessee has not sought a stay pending appeal of the adverse declaration issued in

17

*Friends of Georges*, either.

88.     Further, officers of the same government who are sued in their official capacity are in privity with one another.  *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S. Ct. 907, 917, 84 L. Ed. 1263 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.") (citing *Tait v. W. Maryland Ry. Co.*, 289 U.S. 620, 627, 53 S. Ct. 706, 708, 77 L. Ed. 1405 (1933)); *see also Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998) ("A government official sued in his or her official capacity is considered to be in privity with the government.  Therefore, a judgment for or against an official will preclude a subsequent action on the same claim by or against another official or agency of the same government. Similarly, a prior judgment involving the government will bar an action against individual officials of the government in their official capacity for the same claim.") (quoting Moore's Federal Practice 3d, § 131.40[3][e][ii] (citing *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.1988); *Schuster v. Martin*, 861 F.2d 1369, 1373 (5th Cir.1988); *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir.1988); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984)).     Thus, when determining whether the government is bound by an earlier adverse result, "[t]he crucial point is whether or not in the earlier litigation the representative of the [government] had authority to represent its interests in a final adjudication of the issue in controversy." *Sunshine Anthracite Coal Co.*, 310 U.S. at 403.

89.     That inarguably happened in *Friends of Georges, Inc.*, 2023 WL 3790583.  There, the Tennessee Attorney General's Office was served with notice of the litigation and controlled the State's defense as permitted by Tennessee law.  *See id.* ("James R. Newsom, III, Robert W. Wilson, Office of the Tennessee Attorney General and Reporter, Memphis, TN, Jessica Lyn

18

Indingaro, Shelby County District Attorney General's Office, Memphis, TN, Steven James Griffin, Office of the Tennessee Attorney General and Reporter, Nashville, TN, James Matthew Rice, Tennessee Attorney General's Office Attorney General's Office, Nashville, TN, for Defendant."). The *Friends of Georges* declaration thus applies here for that reason, too, since the District Attorney of Shelby County and the District Attorney here are in privity with one another with respect to the official-capacity claims presented.

90.    For all of these reasons, the *Friends of Georges* declaration applies to the Defendant in this case.  The State of Tennessee—which is the real defendant in both suits, and which must "be treated as" such, *see Kentucky v. Graham*, 473 U.S. at 166—thus cannot attempt to relitigate the issue anew here.  Instead, its remedy is appellate review in Sixth Circuit Case No. 23-5611, where—as noted above—the State of Tennessee, through the official-capacity defendant there, has neither sought nor obtained a stay.  *See* **EXHIBIT 5** (Docket, Sixth Circuit Case No., 23-5611).

## V. CAUSES OF ACTION

### COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 UNDER THE FIRST AND FOURTEENTH AMENDMENTS – FREE SPEECH (AGAINST ALL DEFENDANTS)

91.    Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

92.    As alleged above, the Defendants seek to explicitly restrict or chill speech and expression protected by the First Amendment based on its content, its message, and its messenger. The statute is therefore "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. at 163.

93.    This statute cannot survive strict scrutiny. While the government has a recognized

interest in "protecting children from harmful materials," Tennessee law already protects children from obscenity and sexually explicit conduct and materials. *See generally* T.C.A. §§ 39-13-511; 39-17-910, *et seq.*

94.     This law is far from narrowly tailored. It prohibits speech one could see in almost any PG-13 movie; it reaches into the private homes of Tennessee citizens, and it determines on behalf of parents what is and is not appropriate entertainment for their children.

95.     Defendant Desmond, acting on the advice of Defendant AG Skrmetti, communicated to Plaintiffs via the letter that he intends to enforce the Act.

96.     Defendant Desmond's letter effectively empowers the Law Enforcement Defendants to investigate alleged violations of the Act, and encourages law enforcement to specifically target Blount Pride's festival for surveillance and enforcement. Plaintiffs have a reasonable fear of enforcement from the Law Enforcement Defendants.

### COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 UNDER THE
### FIRST AMENDMENT -- RETALIATION
### (AGAINST DEFENDANT DESMOND IN HIS INDIVIDUAL CAPACITY)

97.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

98.     The Plaintiffs, through First Amendment-protected marketing materials, announced their intention to engage in First Amendment-protected activity.

99.     In response, Defendant Desmond took adverse action against them that would deter a person of ordinary firmness from continuing their conduct.

100.    There is a causal connection between the Plaintiffs' First Amendment-protected activity and Defendant Desmond's adverse action.

101.    Defendant Desmond sent a targeted letter threatening to prosecute Plaintiffs and

20

empowering law enforcement officers to investigate alleged violations of the unconstitutional Act.

102.    The letter is a blatant attempt to chill Plaintiffs' speech and expression protected under the First Amendment.

103.    Defendant Desmond sent the letter in direct response to Plaintiff Blount Pride's promotional social media posts. Ex 3 at 1.

104.    Defendant Desmond stated in his letter that he attempted to find a way to prevent Plaintiffs from holding their event. When that failed, he sent a letter effectively encouraging law enforcement to target and surveil Blount Pride Festival.

105.    Regardless of the constitutionality of the Act, Defendant Desmond's letter constitutes retaliation against Plaintiffs, because he disagrees with the content and message of Plaintiffs' speech.

### COUNT 3 – VIOLATION OF 42 U.S.C. § 1983 UNDER THE FOURTEENTH AMENDMENT – VAGUENESS (AGAINST ALL DEFENDANTS)

106.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

107.    A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). When the government seeks to restrict protected speech, "rigorous adherence to [the fair notice] requirements is necessary to ensure that ambiguity does not chill protected speech." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 422 (6th Cir. 2014).

108.    The Act is impermissibly vague. It has neither *mens rea* requirements nor affirmative defenses.

109.     The Act prohibits performances that are "harmful to minors," but "minor" is defined as "any person who has not reached eighteen (18) years of age and is not emancipated." Tenn. Code. Ann. §39-17-901(8). What is "harmful" to a five-year-old may not be harmful to a 15-year-old, but the Act does not distinguish between toddlers and teenagers.

110.     The Act gives broad discretion to prosecutors and law enforcement officers to interpret the law according to their own beliefs about what conduct may violate the law. Defendant Desmond's letter exemplifies this: Blount Pride's social media posts contain no sexual, obscene, or indecent content, yet under Defendant Desmond's reading of the Act, the promotional posts give him reason to believe Plaintiffs may intend to violate the law.

111.     The broad, sweeping nature of the statute, and the vagueness regarding what conduct is and is not prohibited, will have, and has had a chilling effect on the First Amendment rights of Plaintiffs and all citizens of Blount County.

### COUNT 4 – TENN. CODE ANN. § 1-3-121
### (AGAINST DEFENDANTS DESMOND AND SKRMETTI)

112.     The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

113.     Tenn. Code Ann. § 1-3-121 affords aggrieved citizens robust statutory authority to obtain injunctive relief in any action brought regarding the legality of a governmental action.  See id. ("a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action.").

114.     The Plaintiffs are "affected" by the illegal and unconstitutional actions of Defendant Desmond and Skrmetti, the first of whom has proposed to enforce an unconstitutional law, and the latter of whom has instructed that enforcement of an unconstitutional law is

permissible even after the law was declared unconstitutional.

115. The Plaintiffs are entitled to declaratory relief and complete injunctive relief enjoining further harm arising from these Defendants' illegal actions.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each Count of the Complaint and pray for the following relief:

1. Permit Plaintiffs leave to amend this Complaint after reasonable discovery;

2. Grant Plaintiffs a Temporary Restraining Order and Preliminary Injunction, preventing Defendants from enforcing the Act;

3. Enter a judgment declaring that the Act is unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

4. Enter a judgment declaring that Defendant Desmond violated Plaintiffs' rights under the First Amendment;

5. Award Plaintiffs compensatory, incidental, and punitive damages in an amount to be shown at trial;

6. Award Plaintiffs their reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

7. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

8. Grant the Plaintiffs such further relief as the Court may deem just and proper.

Respectfully submitted,

/s *Justin S. Gilbert*
Justin S. Gilbert, # 017079
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
justin@schoolandworklaw.com

23

Brice M. Timmons, # 029582 (*pro hac vice pending*)
Melissa J. Stewart, # 040638 (*pro hac vice pending*)
Craig A. Edgington, # 038205 (*pro hac vice pending*)
Donati Law, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
melissa@donatilaw.com
craig@donatilaw.com

Stella Yarbrough, BPR # 033637 (*pro hac vice pending*)
Lucas Cameron-Vaughn, # 038451 (*pro hac vice pending*)
Jeff Preptit, # 038451 (*pro hac vice pending*)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org
jpreptit@aclu-tn.org

Daniel A. Horwitz, # 032176 (*pro hac vice pending*)
Lindsay B. Smith, # 035937 (*pro hac vice pending*)
Melissa K. Dix, # 038535 (*pro hac vice pending*)
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

## VERIFICATION

I, Ari Baker, declare as follows:

1.      I am the Board President of Blount Pride, the organizational Plaintiff in this case. I am an adult citizen of the United States of America, and a resident of the State of Tennessee.

2.      I have personal knowledge of the factual allegations asserted in the foregoing *Verified Complaint* that concern Blount Pride's plans to host a Pride event on September 2, 2023, and the issuance of a letter from District Attorney Ryan K. Desmond.  If called on to testify, I would competently testify that those factual allegations are true.

3.      Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the factual allegations asserted in the foregoing *Verified Complaint* that concern Blount Pride's plans to host a Pride event on September 2, 2023, and the issuance of a letter from District Attorney Ryan K. Desmond are true and correct.

Executed on:  8/30/23

Signature:

## **VERIFICATION**

I, Matthew Lovegood, declare as follows:

1.      I am a Plaintiff in this case. I am an adult citizen of the United States of America.

2.      I have personal knowledge of the factual allegations asserted in the foregoing *Verified Complaint* that concern Blount Pride's plans to host a Pride event on September 2, 2023 and my plans to perform in drag at this event.  If called on to testify, I would competently testify that those factual allegations are true.

3.      Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the factual allegations asserted in the foregoing *Verified Complaint* that concern Blount Pride's plans to host a Pride event on September 2, 2023 and my plans to perform in drag at this event are true and correct.

Executed on:  August 30, 2023

Signature:    *Matthew Lovegood*
                _____