UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BLOUNT PRIDE, INC., a 501(c)(3) nonprofit )
organization, and MATTHEW LOVEGOOD, )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )   No. 3:23-CV-00316-JRG-JEM
                                        )
RYAN K. DESMOND, in his individual capacity )
and official capacity as the District Attorney )
General of Blount County, Tennessee, *et al.*, )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction with Incorporated Memorandum of Law [Doc. 2], Plaintiffs' Motion to Appear Telephonically or via Video Conference at the Hearing on Plaintiffs' Motion for Temporary Restraining Order [Doc. 3], Defendant District Attorney Ryan K. Desmond's Response [Doc. 10], and Plaintiffs' Reply [Doc. 13]. For the reasons herein, the Court will grant Plaintiffs' motion for a temporary restraining order.

### I. BACKGROUND

Plaintiffs Blount Pride, Inc. ("Blount Pride") and Matthew Lovegood filed a Verified Complaint [Doc. 1][1] under 42 U.S.C. § 1983, alleging that Defendants Blount County District Attorney Ryan K. Desmond, Blount County Sheriff James Berrong, Maryville Police Chief

---

[1] Plaintiffs' complaint is verified under 28 U.S.C. § 1746, *see El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed under the penalty of perjury under 28 U.S.C. § 1746), and the Court may therefore rely on it as evidence, *see Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 677 n.3 (W.D. Tenn. 2009) (stating that "the court may rely on facts contained in affidavits and verified complaints in deciding whether to issue a temporary restraining order or preliminary injunction" (citing Fed. R. Civ. P. 65(b)(1)(A))).

Tony Crisp, Alcoa Police Chief David Carswell, and Tennessee Attorney General Jonathan Skrmetti have violated their rights under the First and Fourteenth Amendments of the United States Constitution. These alleged violations stem from Defendants threats to enforce the Adult Entertainment Act, Tenn. Code Annotated § 7-51-1407 ("the Act"), against Plaintiffs at this weekend's third annual Blount Pride festival. [Compl. at 14–16].

The Act states that "it is an offense for a person to perform adult cabaret entertainment: (A) on public property; or (B) in a location where the adult cabaret entertainment could be viewed by a person who is not an adult." Tenn. Code Ann. § 7-51-1407(c)(1). The Act defines "adult cabaret entertainment" as "adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901, and that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers" and that "include[] a single performance or multiple performances by an entertainer." *Id.* § 7-51-1401. "Harmful to minors" means:

> that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:
>
> (A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;
> (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and
> (C) Taken as whole lacks serious literary, artistic, political or scientific values for minors[.]

Tenn. Code Ann. § 39-17-901(6)(A)-(C).

Plaintiff Blount Pride organizes and hosts an annual Pride festival "in celebration of the LGBTQ+ community." [Compl. at 14]. This festival features live entertainment, which includes "drag" performances by performers. [*Id.* at 2]. Drag entertainers don clothing more

conventionally worn by a member of the opposite sex—a common example of which is male performers dressing in traditionally feminine clothing, wearing makeup, and adopting woman-like hairstyles. [*Id.* at 4]. Drag performances often consist of comedy, singing, dancing, or lip-synching. [*Id.*]. Mr. Lovegood is a drag entertainer who performs under the stage name "Flamy Grant" and is scheduled to perform at Blount Pride's third annual festival. [*Id.*]. The festival has no age restrictions, so minors may be present. [*Id.* at 14].

Three days ago, Blount Pride received a "Notice Regarding The Adult Entertainment Act" [Doc. 1-3] from Defendant District Attorney Desmond. Defendant Chief Crisp, Sheriff Berrong, and Chief Carswell also received the notice. [*Id.*]. District Attorney Desmond's notice states that the Blount County District Attorney's Office had fielded "numerous communications from law enforcement, local officials, and concerned citizens" that Blount Pride's third annual festival is "marketing itself in a manner which raises concerns that the event may violate certain criminal statutes within the State of Tennessee." [*Id.*]. In the notice, District Attorney Desmond acknowledges that the United States District Court for the Western District of Tennessee has recently held that the Act is unconstitutional but states that the Western District's "enjoinder is presently only applicable to the 30th Judicial District," which serves Shelby County, Tennessee. [*Id.*]. District Attorney Desmond goes on to state that "violations of the AEA can and will be prosecuted by [his] office" and that he has "relayed to local law enforcement" his intent to prosecute any violators of the Act. [*Id.* at 1–2].

Although District Attorney Desmond, in the notice, maintains that his office "does not prematurely evaluate the facts or evidence related to a potential investigation into criminal conduct" and "it is certainly possible that the event in question will not violate" any criminal statutes, he also states that "[i]t should be noted at this point that a diligent search of relevant

3

statutory authority has revealed no mechanism under which a District Attorney General in the State of Tennessee could petition for a temporary injunction to enjoin an individual or group from organizing and holding an event that would be violative of [the Act]." [*Id.* at 2–3]. In the remainder of the notice, District Attorney Desmond sets out pertinent Tennessee law related to the Act and addresses possible protests at the event. [*Id.*].

After receiving the notice, Chief Crisp contacted Maryville College, where Blount Pride is scheduled to hold its third annual festival, and alerted school officials that they could face prosecution if they violate the Act. [*Id.* at 15–16]. Plaintiffs maintain that District Attorney Desmond's notice, as well as his decision to send the notice to Chief Crisp, Sheriff Berrong, and Chief Carswell, "specifically targets Plaintiffs for enforcement" and "chills the speech of Plaintiffs and any other person in Blount County who is subject to Defendant Desmond's jurisdiction." [*Id.* at 15]. Plaintiffs, therefore, move for a temporary restraining order that:

> Enjoin[s] Defendants Ryan K. Desmond, James Berrong, Tony Crisp, and David Carswell, in their official capacities, from enforcing, detaining, arresting, or seeking warrants or taking any other action to enforce or threaten to enforce T.C.A. § 7-51-1407 pending further orders of this Court; and
>
> Enjoin[s] Defendants Ryan K. Desmond, James Berrong, Tony Crisp, and David Carswell, in their official capacities, from interfering with the September 2, 2023 Blount Pride event by any means, including but not limited to, discouraging third parties including but not limited to the event venue, Maryville College, from hosting the event or making modifications to the event;

[Pls.' Mot. for TRO at 22]. Plaintiffs also move for a preliminary injunction; specifically, they move the Court "to find that Tenn. Code Ann. § 7-51-1407 violates the First Amendment and issue a Preliminary Injunction pending final adjudication of this litigation." [*Id.* at 23]. Having carefully considered Plaintiffs' motion and the parties' arguments, the Court is now prepared to rule on them.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the purpose of a temporary restraining order is merely to preserve the relative positions of the parties—i.e., the status quo—until the Court can hold an adversarial hearing for a preliminary injunction. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). When determining whether to issue a temporary restraining order, or a preliminary injunction, the Court considers four factors that govern its analysis : (1) whether the movant has shown a strong likelihood of success on the merits of the controversy, (2) whether the movant is likely to suffer irreparable harm without an injunction, (3) whether an injunction would cause substantial harm to others, and (4) whether an injunction would serve the public interest. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007).

A temporary restraining order, however, is an "extraordinary remedy," *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006), and the movant must establish that "the circumstances clearly demand it," *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The four factors generally ought "to be balanced against one another and should not be considered prerequisites to the grant" of a temporary restraining order. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citations omitted). When the Court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 315 (6th Cir. 1998) (affirming

5

the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits).

### III. ANALYSIS

Section 1983 permits a claim for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant can be liable "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of either a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id.* at 511. "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

A violation of a constitutional or federal statutory right is a prerequisite to a claim under § 1983 because § 1983 "does not confer substantive rights" on a plaintiff; rather, it is merely a conduit through which a plaintiff may sue another to "vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *see Graham v. Conner*, 490 U.S. 386, 393–94 (1989) ("As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." (quotation omitted)). "The first inquiry in any § 1983" case is therefore "to isolate the precise constitutional violation with which [the defendant] is charged[.]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Graham*, 490 U.S. at 394 ("[A]nalysis begins

6

by identifying the specific constitutional right allegedly infringed by the challenged application of force." (citation and footnote omitted)).

In this case, Plaintiffs allege that the Act violates their First Amendment rights because it is a content-based and viewpoint-based restriction of their right to free speech and because it is unconstitutionally vague. [Compl. 19–20, 21–22; Pls.' Mot. for TRO at 3]. They also allege that District Attorney Desmond violated their First Amendment rights because he threatened prosecution against them for engaging in protected activity under the First Amendment. [Compl. at 20]. To obtain a temporary restraining order, Plaintiffs need not meet their burden as to each of these alleged violations; a single violation will suffice, rendering unnecessary an adjudication of the other alleged violations. *See Adams v. City of Battle Creek*, 250 F.3d 980, 986 (2001) ("Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues." (citation omitted)). Before the Court can consider these alleged violations, however, it must address District Attorney Desmond's argument that Plaintiffs lack standing.[2]

**A. Standing**

A constitutional requirement under Article III, standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) ("We may not decide the merits of a claim for relief unless some party pressing the claim has standing to bring it." (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650–51 (2017))). To attain standing, Plaintiffs have to show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

---

[2] Plaintiffs have certified to the Court that they have provided written or oral notice of their motion for a temporary injunction to all Defendants, [Pls.' Mot. for TRO at 24], but District Attorney Desmond, to date, is the lone defendant to have filed a response. District Attorney Desmond's office, rather than District Attorney Desmond himself, filed this response, indicating that Plaintiffs notice to his office was effective.

7

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).

District Attorney Desmond challenges the first element of standing, an injury in fact. "In a pre-enforcement challenge to a federal statute . . . a plaintiff satisfies the injury requirement of standing by alleging [1] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and [2] [that] there exists a credible threat of prosecution thereunder.'" *Crawford v. U.S. Dept' of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (third alteration in original) (quoting *Susan v. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). According to District Attorney Desmond, Plaintiffs fail to meet this requirement because they have not alleged an intention to stage performances that are harmful to minors under the Act, [Def.'s Resp. at 7], and have not alleged a "certain threat of prosecution," [*id.* at 9].

But Plaintiffs have alleged that Mr. Lovegood is a drag artist, has been performing in drag for more than three years, and intends to perform at Blount Pride's upcoming festival. [Compl. at 2]. District Attorney Desmond's argument that these allegations are insufficient to satisfy standing amounts to an argument that a performance in drag is not harmful to children. Maybe it is, maybe it is not—that question is an entirely subjective one because, by statute, it requires "the average person applying contemporary community standards" to answer it. Tenn. Code Ann. § 39-17-901(6)(A). But the record strongly, and maybe even conclusively, suggests that District Attorney Desmond issued his notice in response to Mr. Lovegood's inclusion on the festival's bill. After all, District Attorney Desmond circulated his notice, at least in part, in response to Blount Pride's "marketing itself in a manner which raises concerns that the event may violate certain criminal statutes within the State of Tennessee," [Compl. at 14–15], and Plaintiffs allege that the marketing materials included several photos of Mr. Lovegood's "drag

8

Case 3:23-cv-00316-JRG-JEM   Document 22   Filed 09/01/23   Page 8 of 16   PageID #: 487

persona," [*id.* at 15]. The Court therefore concludes that Plaintiffs have sufficiently alleged—and again, the Court has license to view the verified allegations as evidence—intent on Mr. Lovegood's part to perform in a way that, at least in District Attorney Desmond's view, is likely to be harmful to minors under the Act.

As to District Attorney Desmond's second argument—i.e., that Plaintiffs fail to allege a certain threat of prosecution—he correctly contends that Plaintiffs, to attain standing, must show that they face "a *certain* threat of prosecution" if Plaintiffs perform at Blount Pride's upcoming festival. *Crawford*, 868 F.3d at 455 (emphasis in original). The Court considers several factors in ascertaining whether a party faces a credible threat of prosecution sufficient to confer standing:

> (1) 'a history of past enforcement against the plaintiffs or others'; (2) 'enforcement warning letters sent to the plaintiffs regarding their specific conduct'; (3) 'an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action'; and (4) the 'defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'

*Online Merchants Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (quotation omitted). These factors "are not exhaustive, nor must each be established." *Id.* (citation omitted).

District Attorney Desmond contends that the record lacks evidence of the first factor, and the Court agrees with his contention, but it cannot agree with his contention that the record is without evidence of the remaining three factors. Under the second factor, District Attorney Desmond argues that his notice is not an enforcement warning letter because it states that "[i]t is certainly possible that [Plaintiffs' shows] will not violate any of the criminal statutes." [Def.'s Resp. at 10]. But his reading of his own notice is a selective one, because throughout the notice, he warns would-be violators of the Act of his authority and his intention to prosecute them under the Act:

9

- "[T]he Blount County District Attorney's Office is aware of a coming event planned for September 2, 2023, that is marketing itself in a manner which raises concerns that the event may violate certain criminal statutes within the State of Tennessee."

- "It is my conclusion that violations of the [Act] can and will be prosecuted by my office."

- "[If] review of the evidence substantiates the charges, the Blount County District Attorney's Office will prosecute any criminal violations, subject to our prosecutorial discretion."

- "[I]f sufficient evidence is presented to this office that these referenced criminal statutes have been violated, our office will ethically and justly prosecute these cases in the interests of justice."

[Notice at 1–3]. And the Court cannot help but wonder, why would District Attorney Desmond send the notice to multiple local law enforcement officials—Chief Crisp, Sheriff Berrong, and Chief Carswell—if, as he now claims, his notice is merely a paper tiger and nothing more? The record, therefore, firmly satisfies the second factor.

Next, as to the third factor—that is, "an attribute of the challenged statute that makes enforcement easier or more likely," *Cameron*, 995 F.3d at 550—District Attorney Desmond maintains that it is a non-factor because the enforcement of the Act is incumbent upon state officials who have ethical obligations to act evenhandedly. [Def.'s Resp. at 10]. The question, though, is not one of ethics but of whether the statutory language, or some other attribute of the statute itself, makes its enforcement easier. Under the Act's plain language, which punishes performances that "[w]ould be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors," Tenn. Code Ann. § 39-17-901(6)(A), the reference point for conduct that is subject to prosecution is amorphous and vague, making enforcement not only easier but also the threat of prosecution to an individual virtually impossible for that individual to forecast, *see Friends of Georges, Inc. v.*

*Mulroy*, ___ F. Supp. 3d ___, 2023 WL 3790583, at *29 (W.D. Tenn. June 2, 2023) ("'[C]ontemporary community standards' are not the same for a five-year-old and a seventeen-year-old. . . . Clarity on this point matters greatly to Plaintiff, an organization seeking to provide a space for drag-centric performances outside of age-restricted venues[.]"); *see id.* at *23–24 (observing that the Act "has no textual scienter requirement," which "trouble[d] the Court for a statute that regulates speech with criminal sanctions," and that "[s]everal cases in which the Supreme Court upheld a restriction on speech contained a textual scienter requirement of 'knowing'" (citing *New York v. Ferber*, 458 U.S. 747 (1982); *Ginsburg v. New York*, 390 U.S. 629 (1968); *Miller v. California*, 413 U.S. 15 (1973))).

Indeed, just this summer, the Supreme Court underscored the vital role that scienter plays in the protection of free speech under the First Amendment:

> "[T]he First Amendment demands proof of a defendant's mindset to make out an obscenity case. Obscenity is obscenity, whatever the purveyor's mental state. But we have repeatedly recognized that punishment depends on a 'vital element of scienter'—often described as the defendant's awareness of 'the character and nature' of the [obscene speech]. The rationale should by now be familiar. Yes, 'obscene speech and writings are not protected.' But punishing [obscene speech] without regard to scienter would 'have the collateral effect of inhibiting' protected expression. Given 'the ambiguities inherent in the definition of obscenity,' the First Amendment 'requires proof of scienter to avoid the hazard of self-censorship.'"

*Counterman v. Colorado*, 143 S. Ct. 2106, 2115–16 (2023) (quotations omitted). The Act's lack of any scienter requirement, without question, makes enforcement of the statute easier, and it also makes the Act's implications under the First Amendment more palpable. The record therefore satisfies the third factor.

Lastly, as to the fourth and final factor, District Attorney Desmond contends that the record fails to show that he refused to disavow enforcement of the Act because "Plaintiffs have not identified their future intended speech with any specificity, so there is no future action to

11

disavow enforcement against." [Def.'s Resp. at 10]. But again, Plaintiffs have alleged that Mr. Lovegood is a drag artist, has been performing in drag for more than three years, and intends to perform at Blount Pride's upcoming festival. District Attorney Desmond cannot seriously argue that Mr. Lovegood's upcoming musical performance is not speech under the aegis of the First Amendment. *See ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) ("The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures." (quoting *Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995))). The record therefore satisfies the fourth factor, and because three of the four factors are present in the record, Plaintiffs have standing. *See Cameron*, 995 F.3d at 550 (stating that standing requires only "some combination" of the factors to be present).

### B. Strong Likelihood of Success on the Merits

Again, Plaintiffs bring suit under § 1983 and allege multiple violations of their First Amendment rights arising from the Act, including allegations that the Act is a content-based and viewpoint-based restriction of their right to free speech and is unconstitutionally vague. District Attorney Desmond contends otherwise. United States District Judge Thomas L. Parker, in *Friends of Georges, Inc. v. Mulroy*—an opinion that both parties acknowledge—has already determined that the Act violates the First Amendment because it constitutes a content-based and viewpoint-based restriction on free speech and is unconstitutionally vague. 2023 WL 3790583 at *19–21, *28–30. In that case, as in Plaintiffs' case here, the plaintiff was a 501(c)(3) nonprofit organization that produced drag-centric performances and challenged the Act's constitutionality on First-Amendment grounds by bringing suit under § 1983. Plaintiffs cite *Friends of Georges* as

12

persuasive authority and argue that it should determine this case's outcome, [Pls.' Mot. for TRO at 7–10], whereas District Attorney Desmond asserts that *Friends of Georges* is an "erroneous" decision, [Def.'s Resp. at 4].

Judge Parker's seventy-page opinion is well-written, scrupulously researched, and highly persuasive. The Court, based on the parties arguments at this juncture in the proceedings, sees no reason to "break new ground" on the constitutional issues that Plaintiffs raise in their complaint when Judge Parker, in his well-reasoned opinion, has already "provide[d] an adequate basis for [a] decision." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 184 (1999); *see Walker v. Floyd County, Ind.*, 4:07-cv-14-SEB-WGH, 2009 WL 2222886, at *1 (S.D. Ind. July 22, 2009) ("We commonly find it helpful to consider the rulings of our sister courts when those rulings address issues nearly identical to issues pending before this Court; and, while they clearly carry no precedential value, such determinations can offer persuasive reasoning."). The Court is likely to adopt Judge Parker's reasoning in addressing the constitutional questions that Plaintiffs raise in their complaint, and Plaintiffs, in relying on *Friends of Georges*, have therefore demonstrated a strong likelihood of success on the merits.

### C. Irreparable Harm

"A showing of 'probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Lucero v. Detroit Pub. Schs.,* 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001) (quoting *Reuters Ltd. v. United Press Int'l., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)); *see D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (stating that "even the strongest showing" on the other factors cannot justify a preliminary injunction without irreparable harm). "Though the standard for a TRO is the same as a preliminary injunction, there is increased emphasis on irreparable harm." *Dinter v. Miremami*, 627 F. Supp. 3d 726, 730 (E.D.

Ky. 2022) (citation omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quotation omitted), and Plaintiffs have therefore shown probable irreparable harm.

### D. Substantial Harm to Others/Public Interest

Finally, the third and fourth factors that comprise the Court's analysis—i.e., whether a temporary restraining order would cause substantial harm to others and whether it would serve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Under these two factors, Plaintiffs must show that a temporary restraining order would not result in substantial harm to others and would serve the public interest. In attempting to make this showing, they correctly argue that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." [Pls.' Mot. for TOR at 21 (quoting *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994))]. In response, District Attorney Desmond argues that the State of Tennessee has a "well-recognized, compelling interest 'in safeguarding the physical and psychological well-being of . . . [its] minor[s]'" and that temporary restraining order would impede them from protecting "the well-being of its youth." [Def.'s Resp. at 24 (first alteration added) (second alteration in original) (quoting *Ferber*, 458 U.S. at 769; *Ginsburg*, 390 U.S. at 636)))].

But, for one thing, District Attorney Desmond appears to concede that Plaintiffs would pose no harm to children through their onstage performances. *See* [Def.'s Resp. at 7 ("Plaintiffs have not alleged an intention to stage performances that are 'harmful to minors.'")]. And for another thing, a temporary restraining order is not a victory on the merits; instead, it is nothing more than a "'procedural' success." *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988)

14

(citing *Hanrahan v. Hampton*, 446 U.S. 754, 758–59 (1980)). In other words, the State should remain free to arrest and prosecute Plaintiffs, on a *retrospective* basis, if they violate the Act during the festival *and* ultimately do not prevail on the merits of this suit. The obtainment of a temporary restraining order is therefore not without hazard to Plaintiffs, and the specter of prosecution, which this suit does not necessarily erase, lessens if not eliminates the prospective harm to the State that District Attorney Desmond complains of. The third and fourth factors therefore militate in favor of a preliminary injunction, as do the other two factors.

## IV. CONCLUSION

Under Rule 65, Plaintiffs satisfy their burden of demonstrating that they are entitled to a temporary restraining order. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction with Incorporated Memorandum of Law [Doc. 2], to the extent Plaintiffs request a temporary restraining order, is **GRANTED**, and the Court **ORDERS** as follows:

1. Defendants Ryan K. Desmond, James Berrong, Tony Crisp, and David Carswell, in their official capacities, are hereby **ENJOINED** from enforcing, detaining, arresting, or seeking warrants or taking any other action to enforce or threaten to enforce T.C.A. § 7-51-1407 pending further order of this Court.

2. Defendants Ryan K. Desmond, James Berrong, Tony Crisp, and David Carswell, in their official capacities, are hereby **ENJOINED** from interfering with Blount Pride's festival, scheduled for September 2, 2023, by any means, including but not limited to, discouraging third parties including but not limited to the event venue, Maryville College, from hosting the event or making modifications to the event.

3. Plaintiffs' Motion to Appear Telephonically or via Video Conference at the Hearing on Plaintiffs' Motion for Temporary Restraining Order [Doc. 3] is **DENIED**.

4. The parties are **ORDERED** to appear before the Court for a preliminary injunction hearing on Friday, September 8, 2023, at 10:00 a.m. at the James H. Quillen United States Courthouse in Greeneville, Tennessee, in Courtroom 400.

5. Plaintiffs are **ORDERED** to file proof of notice of the September 8, 2023 hearing to all Defendants.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE