UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| BLOUNT PRIDE, INC., a 501(c)3 nonprofit organization, and MATTHEW LOVEGOOD,<br><br>*Plaintiffs*,<br>v.<br><br>RYAN K. DESMOND, and TONY CRISP,<br><br>*Defendants*. | ) | Civil No. 3:23-cv-00316<br><br>District Judge J Ronnie Greer<br>Magistrate Judge Jill E McCook |

---

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiffs Blount Pride, Inc. and Matthew Lovegood, by and through their designated attorneys, and for their First Amended Complaint, allege as follows:

## I. NATURE OF THE ACTION

1. This action is brought under 42 U.S.C. § 1983 for violations of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

## II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 on the grounds that the claims asserted herein arise under U.S.C. §§ 1983 and 1988.

3. Venue is proper in this Court and Division under 28 U.S.C. § 1391 on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III. THE PARTIES AND PERSONAL JURISDICTION

4. Plaintiff Blount Pride, Inc. is a registered 501(c)(3) non-profit organization based in Blount County, Tennessee.

5. Blount Pride organizes and hosts an annual Pride festival in Blount County. The festival includes vendors, events, and entertainment, including drag performances by a number of individual artists.

6. The third annual Blount Pride festival was held on September 2, 2023.

7. The Defendants' attempt to prevent and interfere with that event prompted the Plaintiffs' original Complaint in this case.

8. Plaintiff Matthew Lovegood is a drag artist who performs under the name "Flamy Grant."

9. Plaintiff Lovegood has been performing drag for more than four years and was scheduled to perform at the Blount Pride's September 2, 2023 festival.

10. Plaintiff Lovegood ultimately did perform at Blount Pride's September 2, 2023 festival under the protection of this Court's Temporary Restraining Order (Doc. 22).

11. Defendant Ryan K. Desmond—who is sued both in his official and individual capacities—is and was at all times relevant to this action the District Attorney General of Blount County, Tennessee.

12. Defendant Desmond is responsible for prosecuting all violations of state criminal statutes, including Tenn. Code Ann. § 7-51-1407, occurring in the Fifth Judicial District of Tennessee, which is coterminous with Blount County. *See* Tenn. Code Ann. § 8-7-103(1).

13. The actions for which Defendant Desmond is being sued occurred as a specific exercise of the authority of his office and were performed under the color of state law to intimidate Plaintiffs and chill their speech in violation of clearly established First Amendment law.

14. Defendant Tony Crisp—who is sued in his official capacity only—is and was at all times relevant to this action the Maryville City Police Chief.

15. Maryville, Tennessee is located within Blount County and the Fifth Judicial District of Tennessee.

16. The duties of the Maryville City Police Chief include "[p]revent[ing] the commission of crime, violations of law and of the city ordinances[,]" *see* Tenn. Code Ann. § 6-21-602(3), and enforcing Tenn. Code Ann. § 7-51-1407.

17. The Maryville City Police Chief is charged with the duty to prosecute violations of criminal law in court, to seek warrants, and to serve the same. *See* Tenn. Code Ann. § 6-21-604.

18. All actions for which Defendant Crisp is being sued occurred under color of state law.

## IV. STATEMENT OF FACTS

19. In 2023, in response to rising negative public sentiment against drag performers (termed "male or female impersonators" in the statute), the Tennessee General Assembly enacted the Adult Entertainment Act ("AEA"). The AEA states:

**T.C.A. § 7-51-1407**

> (c)(1) It is an offense for a person to perform adult cabaret entertainment:
>
> > (A) On public property; or
> >
> > (B) In a location where the adult cabaret entertainment could be viewed by a person who is not an adult.
>
> (3) A first offense for a violation of subdivision (c)(1) is a Class A misdemeanor, and a second or subsequent such offense is a Class E felony.

**T.C.A § 39-17-901**

> (6) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:

> (A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;
>
> (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and
>
> (C) Taken as whole lacks serious literary, artistic, political or scientific values for minors;

(2) "Community" means the judicial district, as defined in § 16-2-506, in which a violation is alleged to have occurred.

## A. FRIENDS OF GEORGE'S, INC. CHALLENGES THE AEA.

20. Shortly before the AEA was to take effect, a drag-centric theatre company, Friends of George's, Inc., (FOG) filed suit in the U.S. District Court for the Western District of Tennessee.

21. FOG sought injunctive relief against Shelby County District Attorney General Steve Mulroy relative to the AEA.

22. After a hearing in which the court heard arguments from both sides, Judge Thomas Parker issued a temporary restraining order enjoining District Attorney Mulroy from enforcing the AEA.

23. At trial, FOG introduced several examples of drag performances that it argued could reasonably be criminalized under the AEA.

24. Such performances included "FOG performers talking about masturbation, simulating sex acts behind a curtain, and engaging in phallic humor." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 437 (6th Cir. 2024).

25. On June 2, 2023, after a full trial on the merits, the Western District issued its Findings of Fact and Conclusions of Law and determined that the AEA contravened the First Amendment. *Friends of Georges, Inc. v. Mulroy*, 675 F. Supp. 3d 831 (W.D. Tenn. 2023), *rev'd and remanded sub nom*. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024).

26. The district court for the Western District granted FOG both declaratory and injunctive relief against DA Mulroy in his official capacity.

27. On appeal to the Sixth Circuit, the Sixth Circuit held that FOG's performances—though they involved drag performances that included overtly sexual elements—were not likely to run afoul of the AEA, properly construed, as the performances did not meet the high bar of being "harmful to minors" from the perspective of an average seventeen-year-old.

28. According to the Sixth Circuit panel, "binding state precedent has made clear that the standard specifically considered value for 'a reasonable 17-year-old minor.'" *Id.* at 436.

29. Thus, the Sixth Circuit concluded: "In short, the AEA takes (1) adult-oriented performances lacking serious literary, artistic, political, or scientific value for a reasonable 17-year-old that (2) feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers and (3) prohibits them both in public and where minors may view them." *Id.*

30. The Sixth Circuit therefore concluded that FOG lacked standing to challenge the AEA because the AEA did not even "arguably" proscribe even FOG's overtly sexual drag performances. *See Friends of George's, Inc.*, 108 F.4th at 436–40.

**B. <u>DISTRICT ATTORNEY GENERAL RYAN K. DESMOND THREATENS THE PLAINTIFFS, AND THE DEFENDANTS USE THEIR LAW ENFORCEMENT AUTHORITY TO TRY TO SHUT DOWN BLOUNT PRIDE.</u>**

31. While *Friends of George's* was pending appeal before the Sixth Circuit, Defendant Desmond sent a letter to Plaintiffs, the Blount County Mayor, local law enforcement (including Defendant Crisp), the Alcoa City manager, the Maryville City manager, and the event host, Maryville College, to put them "on notice" for the "coming event planned for September 2, 2023[.]" *See* Doc. 1-3.

32. As stated above, Blount Pride, Inc., is a 501(c)(3) nonprofit that organizes and hosts an annual Pride festival in celebration of the LGBTQ+ community.

33. The festival hosts live entertainment, including drag performances by individual entertainers.

34. Blount Pride's third annual festival was scheduled to begin Saturday, September 2, 2023.

35. Plaintiff Lovegood and other drag artists were scheduled to perform in drag at Blount Pride in September 2023.

36. In his threat letter, Defendant Desmond warned that "violations of the AEA can and will be prosecuted" and that the Plaintiffs' "marketing" materials promoting Blount Pride "raise[d] concerns that the event may violate" the AEA. *Id.*

37. Defendant Desmond threatened Plaintiffs based on their marketing materials advertising drag performances despite clearly established law holding: (1) that artistic expression—including expression that is sexual but not obscene—is protected under the First Amendment; and (2) that advertisements enjoy First Amendment protection.

38. Blount Pride's promotional materials included social media posts on Facebook and Instagram. *See* Doc. 1-4.

39. The posts included lists of vendors, planned entertainment, and photos of entertainers, including several photos of Plaintiff Lovegood's drag persona, "Flamy Grant."

40. None of the posts was remotely sexual in nature.

41. All of Blount Pride's promotional materials were protected by the First Amendment.

42. None of the posts advertised or implied that any component of Blount Pride's

planned festival would include adult-oriented performances lacking serious literary, artistic, political, or scientific value for a reasonable 17-year-old.

43. Nevertheless—and strictly because Blount Pride planned to feature drag performances—Defendant Desmond issued a threat letter threatening the Plaintiffs and intended to stop them from advertising, hosting, and performing drag.

44. Even if the planned festival would violate the AEA as Defendant Desmond construed it, clearly established law provided that all of the Plaintiffs' planned activities were protected by the First Amendment.

45. Thus, Defendant Desmond had no lawful basis for threatening the Plaintiffs or their event, given that: (1) the AEA did not criminalize the Plaintiffs' planned activities, and (2) clearly established First Amendment law, which was "supreme" in any event, *see* U.S. Const. art. VI, cl. 2, protected the Plaintiffs' planned activities regardless of how the AEA was construed.

46. While Defendant Desmond claimed that "we do not prematurely evaluate the facts or evidence related to potential investigations," he also stated that his office conducted a "diligent search" to find a way to obtain a prior restraint against Blount Pride:

> It should be noted at this point that a diligent search of relevant statutory authority has revealed no mechanism under which a District Attorney General in the State of Tennessee could petition for a temporary injunction to enjoin an individual or group from organizing and holding an event that would be violative of the AEA.

Doc. 1-3 at 2.

47. In other words, Defendant Desmond tried to violate Plaintiffs' First Amendment rights by imposing a prior restraint against them, and when he determined that "no mechanism" of Tennessee law enabled him to do so, he opted to cast Plaintiffs' advertisements and planned activities as "potentially criminal" before an audience of local law enforcement, the event host, and city management instead.

48. Had Defendant Desmond merely wished to notify the public that he intended to enforce the AEA, he could have issued a public statement to that effect or posted a notice on a publicly available website.

49. Instead, he sent a detailed letter to a mayor, two city managers, local law enforcement, and a university explicitly targeting Blount Pride and the drag artists who were scheduled to perform.

50. Defendant Desmond's letter was a naked attempt to chill the Plaintiffs' speech based on Blount Pride's promotional materials and the Plaintiffs' stated intent to host and perform drag at Blount Pride.

51. Defendant Desmond's widely transmitted letter aimed to chill the speech of Plaintiffs and, in fact, deterred them from proceeding with their festival without protection—as it would have deterred any person of ordinary firmness.

52. Defendant Desmond's threat letter forced the Plaintiffs to seek and obtain immediate protection from this Court to secure their safety.

53. On August 28, 2023, Defendant Crisp contacted Maryville College and requested that Maryville College provide a copy of the contract between Plaintiff Blount Pride and Maryville College.

54. The next day, Defendant Crisp called Bryan F. Coker, President of Maryville College, to notify Mr. Coker of Defendant Desmond's threat letter.

55. Defendant Crisp asked to arrange a meeting between Defendant Desmond, Maryville College, and himself.

56. Maryville College referred Defendant Crisp to Maryville College's legal counsel.

57. Legal counsel for Maryville College was contacted by Defendants Desmond and

Crisp later that day.

58. During the call on August 29, 2023, Defendant Crisp warned Mr. Coker that officials at Maryville College—including Mr. Coker—could face arrest if they permitted Blount Pride to go forward as planned.

## C. <u>THE PLAINTIFFS SEEK AND OBTAIN THIS COURT'S PROTECTION.</u>

59. On August 30, 2023, the Plaintiffs filed this action. *See* Doc. 1.

60. The Plaintiffs sought an immediate Temporary Restraining Order to protect themselves and their planned festival. *See* Doc. 2.

61. Over the Defendants' opposition, this Court on September 1, 2023 entered a Memorandum Opinion and Order granting the Plaintiffs' motion for a temporary restraining order. *See* Doc. 22.

62. In its order, this Court emphasized, among other things, that "District Attorney Desmond cannot seriously argue that [Plaintiff] Lovegood's upcoming musical performance is not speech under the aegis of the First Amendment" and that "District Attorney Desmond appears to concede that Plaintiffs would pose no harm to children through their onstage performances." *Id.* at 12, 14.

63. The Defendants—including earlier Defendants who have since been dismissed from this action based on mootness—then stipulated that this Court's TRO should be converted to a preliminary injunction, and this Court entered a preliminary injunction against all of them by consent. *See* Doc. 35; Doc. 43.

64. The Sixth Circuit's opinion in *Friends of George's* later confirmed that the AEA did not even "arguably" proscribe the Plaintiffs' planned festival and performance. *Friends of George's, Inc.*, 108 F.4th at 436–40.

65. "[T]hat litigation loss [was] as a real-world win for the plaintiffs . . . . The law [was] not enjoined. But [the Sixth Circuit determined that] it also does not apply to the conduct that they want to undertake." *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 860 (6th Cir. 2024) (Murphy, J., concurring) (citing *Friends of George's, Inc.*, 108 F.4th at 435–37).

## D. <u>THE DEFENDANTS CONTINUE TO ATTEMPT TO INTERFERE WITH BLOUNT PRIDE.</u>

66. Under the protection of this Court's TRO, Blount Pride moved forward with its festival as scheduled, and Plaintiff Lovegood performed as planned.

67. Although this Court had enjoined Defendants from "interfering with Blount Pride's festival scheduled for September 2, 2023, by any means, including but not limited to, discouraging third parties including, but not limited to, the event venue, Maryville College, from hosting the event or making modifications to the event[,]" Doc. 22 at 15, the Defendants did not end their retaliatory conduct.

68. Instead, on the morning of Blount Pride, Defendant Crisp announced that the Maryville Police Department would not be providing the originally planned security for the event, claiming that this Court's TRO somehow prohibited the Maryville Police Department from providing normal security to Blount Pride.

69. As a result, Blount Pride was required to secure less qualified, unarmed private security, including untrained volunteers, at substantial expense.

70. Plaintiffs' counsel also were compelled to threaten to file a motion for contempt should Chief Crisp alter his plans to provide police protection.

71. Eventually, the Maryville Police Department was instructed to be present, but its officers did not actually provide meaningful security for an event that became the site of protests due to the controversy stirred by District Attorney Desmond's illicit actions.

72. Because the Maryville Police Department neglected to provide meaningful security, anti-LGBTQ+ protesters were able to enter the event, creating a chaotic and stressful environment.

73. The Defendants' actions caused further damage to Plaintiffs after the event.

74. In particular, because of the Defendants' actions in 2023, anticipated costs for security for Blount Pride ballooned in 2024.

75. As a result, Maryville College declined to host Blount Pride's 2024 festival, citing safety concerns and exorbitant security expenses.

76. Blount Pride then expended significant resources finding an appropriate alternative host site for the 2024 Pride event—eventually settling on having a rally in Maryville rather than a ticketed event because of security concerns and expense.

77. Through their actions, Defendants Desmond and Crisp intentionally interfered with the Plaintiffs' planned festival and performance.

78. Defendant Desmond engaged in actionable First Amendment retaliation against the Plaintiffs and threatened their panned event in a manner that patently violated the Plaintiffs' clearly established First Amendment rights.

79. For these reasons, the Plaintiffs now seek damages and permanent injunctive relief forbidding the Defendants from taking any further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract—including, without limitation, by threatening to enforce the AEA against them—for promoting a drag performance, holding a drag performance, or hosting Blount Pride.

## V. CAUSES OF ACTION

### COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 UNDER THE FIRST AND FOURTEENTH AMENDMENTS/INJUNCTIVE RELIEF (AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES)

80. The Plaintiffs incorporate and reallege all preceding allegations as if fully set forth

herein.

81. The Plaintiffs were engaged in constitutionally protected speech and expression when they advertised, planned, and held the 2023 Blount Pride festival, which featured drag performances by Flamy Grant.

82. Drag is a form of creative expression that includes dance, fashion, humor, political commentary and theatricality. Each is protected by the First Amendment. *See, e.g.*, *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981) ("[M]otion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee.").

83. The Defendants sought to threaten, restrict, chill, and punish Plaintiffs' speech and expression based on its content, its message, and its messenger.

84. The Defendants' actions violated clearly established law instructing that Plaintiffs' speech and expression is protected by the First Amendment.

85. Based strictly on the fact that the Plaintiffs promoted and planned to hold drag performances, Defendant Desmond communicated to the Plaintiffs via a threat letter that he intended to enforce the AEA against them after finding no other means to civilly enjoin their performances.

86. In an effort to inhibit the Plaintiffs' speech and expression based its content, its message, and its messenger—and based strictly on the fact that the Plaintiffs promoted and planned to hold drag performances—Defendant Crisp threatened without lawful basis Maryville College and its agents and officials should they host Blount Pride.

87. Following this Court's issuance of a TRO protecting the 2023 Blount Pride festival, Defendant Crisp ordered his officers to withdraw security for the event, throwing the event into

chaos.

88. This further illicit attempt to interfere with the Plaintiffs' planned festival and performances forced Plaintiff Blount Pride to take additional actions to secure the premises, and it inflamed protests and enabled harassment of Blount Pride's attendees.

89. In the future, Plaintiff Blount Pride and Plaintiff Lovegood intend to continue hosting Blount Pride and performing in drag, respectively, within the Defendants' jurisdiction.

90. Blount Pride's planned 2025 festival, at minimum, will include a drag performance by Plaintiff Lovegood.

91. The Plaintiffs intend to promote that performance in the same way they promoted Plaintiff Lovegood's 2023 performance.

92. The Defendants' past illicit attempts to stop the Blount Pride event—and their many previous efforts to interfere with the Blount Pride festival notwithstanding the Defendants' clearly established First Amendment rights—provide "good evidence" that the threat of future harm "is not chimerical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (cleaned up).

93. For these reasons, this Court should permanently enjoin the Defendants from taking any further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract—including, without limitation, by threatening to enforce the AEA against them—for promoting a drag performance, holding a drag performance, or hosting Blount Pride.

**COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 UNDER THE FIRST AMENDMENT -- RETALIATION (AGAINST DEFENDANT DESMOND IN HIS INDIVIDUAL CAPACITY)**

94. The Plaintiffs incorporate and reallege all preceding allegations as if fully set forth herein.

95. The Plaintiffs, through First Amendment-protected marketing materials, announced

their intention to engage in First Amendment-protected activity: namely, a Pride festival that included non-obscene drag performances.

96. Mere, non-obscene drag performance is not even arguably criminalized by the AEA.

97. Even if mere, non-obscene drag performance had been arguably criminalized by the AEA, mere drag performance was, at all times relevant to this action, constitutionally protected by supreme and clearly established First Amendment law.

98. In response to the Plaintiffs promoting mere, non-obscene drag performances, Defendant Desmond took adverse action against the Plaintiffs.

99. In particular, based on the Plaintiffs' promotional materials and planned non-obscene drag performances, Defendant Desmond sent a targeted letter threatening Plaintiffs and transmitted a copy of it to local law enforcement.

100. Defendant Desmond's threat letter was a blatant attempt to chill Plaintiffs' speech and expression, all of which was protected by clearly established First Amendment law.

101. Defendant Desmond sent his threat letter in direct response to Plaintiff Blount Pride's promotional social media posts advertising Plaintiff Lovegood's and other artist's planned drag performances.

102. Defendant Desmond stated in his letter that he had first attempted to find a way to obtain a prior restraint against the Plaintiffs.

103. Defendant Desmond's adverse action against the Plaintiffs would deter a person of ordinary firmness from continuing their conduct.

104. There was a causal connection between the Plaintiffs' First Amendment-protected activity and Defendant Desmond's adverse action against the Plaintiffs.

105. Defendant Desmond's letter did and was designed to retaliate against the Plaintiffs because he disagreed with the content and message of Plaintiffs' planned speech and expression.

106. Defendant Desmond is liable to the Plaintiffs for all damages attributable to his actionable First Amendment retaliation.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants on each Count of this Complaint and pray for the following relief:

1. Permanently enjoin the Defendants from taking any further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract—including, without limitation, by threatening to enforce the AEA against them—for promoting a drag performance, holding a drag performance, or hosting Blount Pride.

2. Enter judgment against Defendant Desmond for retaliating against the Plaintiffs' protected speech;

3. Award Plaintiffs compensatory and punitive damages in an amount to be shown at trial;

4. Award Plaintiffs their reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, including as to the previous Defendants against whom the Plaintiffs prevailed before their claims against them became moot, *see, e.g., Planned Parenthood S.W. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019); *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023).

5. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

6. Grant the Plaintiffs such further relief as the Court may deem just and proper

Respectfully submitted,

/s/ *Stella Yarbrough*

Brice M. Timmons (TN #29582)
Craig A. Edgington (TN #38205)
WATSON BURNS, PLLC
5865 Ridgeway Center Parkway
Suite 300
Memphis, TN 38120
901-529-7996 – Telephone
901-877-4629 – Facsimile
btimmons@watsonburns.com
cedgington@watsonburns.com

Justin S. Gilbert, # 017079
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
justin@schoolandworklaw.com

Stella Yarbrough, BPR # 033637
Lucas Cameron-Vaughn, # 038451
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org

Daniel A. Horwitz, # 032176
Lindsay B. Smith, # 035937
Melissa K. Dix, # 038535
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
(615) 739-2888
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all parties of record via this Court's ECF filing system this 4th day of January, 2025.

*/s/Stella Yarbrough*