UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| BLOUNT PRIDE, INC., a 501(c)(3) nonprofit organization, and MATTHEW LOVEGOOD, | § § § § | |
| *Plaintiffs,* | § § | Civil No. 3:23-cv-00316 |
| v. | § § | District Judge J. Ronnie Greer Magistrate Judge Jill E McCook |
| RYAN K. DESMOND, and TONY CRISP, | § § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

i

# TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Background .................................................................................................................. 1

Legal Standard ............................................................................................................ 4

Argument .................................................................................................................... 5

   I. Plaintiffs Have Adequately Pleaded a Claim that Defendants Desmond and Crisp Should Be Enjoined from Further Suppressing or Interfering with Plaintiffs' Protected Speech (Count 1). .......................................................................................................... 5

      a. Plaintiffs have standing. ................................................................................ 5

      b. Plaintiffs' claims are not judicially estopped. ............................................ 15

  II. Plaintiffs Have Adequately Pleaded a Claim that Defendant Desmond Unlawfully Retaliated Against Plaintiffs for Engaging in Protected Speech (Count 2). ......................................... 17

      a. Desmond retaliated against Plaintiffs for engaging in protected speech ..................... 17

      b. Plaintiffs' retaliation claim is not barred by absolute immunity .................................. 21

      c. Plaintiffs' retaliation claim is not barred by qualified immunity .................................. 25

Conclusion ................................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Myers*, 2017 WL 8792715, at *1 (W.D. Mo. Nov. 27, 2017).......................... 24

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ....................................................... 27

*Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 261, (1977) ...........................11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 5

*Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) ......................................... 7, 12, 27

*Bannister by Bannister v. Knox Cnty. Bd. of Educ.*, No. 3:18-CV-188, 2021 WL 2685193, at *4 (E.D. Tenn. June 30, 2021) .................................................................................. 15

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963)......................................... passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................................... 5

*Bigelow v. Virginia*, 421 U.S. 809, 818 (1975) ............................................................ 18

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) .............................................. 17, 21

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ............................................. 22, 23

*Burns v. Reed*, 500 U.S. 478, 492 (1991)........................................................... 22, 25

*Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 860 (6th Cir. 2024).......................... 4

*Courtright v. Cty. Of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ...................... 26

*Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999)...............7, 11

*DLX Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) ............................................ 5

*Dodge v. United States*, 162 F. Supp. 2d 873, 882 (S.D. Ohio 2001) .......................... 16

*Doyle v. James*, 733 F. Supp. 3d 191, 209 (W.D.N.Y. 2024) .................................. 7, 27

*Evans-Marshall v. Bd. of Educ. of Tipp Cty. Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) ......................................................................................................... 26

*Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013)........................................ 13

*Forrester v. White*, 484 U.S. 219, 229 (1988).......................................................... 22

*Friends of George's, Inc. v. Mulroy*, 675 F. Supp. 3d 831 (W.D. Tenn. June 2, 2023) .................. 4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 185–86 (2002) .... 14

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010)................................... 19, 20

*Glenn v. Holder,* 690 F.3d 417 (6th Cir. 2012)......................................................... 10

*Golden v. Gorno Bros., Inc.*, 410 F. 3d 879, 881 (6th Cir. 2005)............................... 5

*Goldschmidt v. Patchett*, 686 F.2d 582, 584–85 (7th Cir. 1982)................................ 24

*Guertin v. State*, 912 F.3d 907, 817 (6th Cir. 2019) .................................................. 26

*Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983) ...................................... 27

*Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) ........................................ 5

*Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979)................................................... 24

*Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002) ............................................... 22

*Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) ................................................... 5

*Hornbeak-Denton v. Myers*, 361 F. App'x 684, 688 (6th Cir. 2010) .............................. 20, 28

*Imbler v. Pachtman*, 424 U.S. 409, 430–431 (1976) ........................................ 22, 23, 25

*Jamison v. Texas*, 318 U.S. 413 (1943).............................................................. 18

*Josephson v. Ganzel,* 115 F.4th 771, 787 (6th Cir. 2024)................................. 19, 20, 21

*Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) ........................................................ 22

*Kardules v. City of Columbus,* 95 F.3d 1335, 1348 (6th Cir. 1996)................................... 14

*Kruse v. Repp*, 611 F. Supp. 3d 666, 724 (S.D. Iowa 2020) ........................................ 15

*Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) .......................................... 19, 20

*Lacey v. Maricopa Cnty.,* 693 F.3d 896, 913 (9th Cir. 2012)......................................... 23

*Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).............................................................. 6

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) ............. 17

*Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) ...................................................... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ....................................... 6, 13

*MacKey v. Rising*, 106 F.4th 552, 567 (6th Cir. 2024).............................................. 16

*Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) .............................................. 16

*McGlone v. Bell*, 681 F.3d 718, 735 (6th Cir. 2012) ............................................ 26, 27

*Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005)............................................ 18, 19

*Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) ................................... 20

*Moratorium Now! v. Detroit 300 Conservancy*, No. 15-CV-10373, 2015 WL 11005026, at *2
    (E.D. Mich. July 22, 2015) ...................................................................... 15

*Morrison v. Bd. of Educ. of Boyd Cnty.,* 521 F.3d 602, 609 (6th Cir. 2008)...................... 6, 11

*Mosley v. Kohl's Dep't Stores, Inc.,* 942 F.3d 752, 756 (6th Cir. 2019) ............................. 5

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015)............................................................. 27

*Myers v. Morris*, 810 F.2d 1437, 1444–46 (8th Cir. 1987) ......................................... 24

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024).......................................... passim

*Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019)................................. 6, 7, 27, 29

iv

*Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) ...................................................... 7, 13, 27

*Rattner v. Netburn*, 930 F.2d 204, 210 (2d Cir. 1991) .............................................................. 6, 7

*Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 690–91 (6th Cir. 2020) ...................... 22, 23

*Rieves*, 959 F.3d at 690–91 ............................................................................................... 22

*Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997) .....................................................11, 12, 15

*Siefert v. Hamilton Cnty*., F.3d 753, 762 (6th Cir. 2020) ...................................................... 26

*Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764 (6th Cir. 2019) ............................................... 7, 8

*Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003)................................................... 22, 23

*Stockdale v. Helper*, 979 F.3d 498 (6th Cir. 2020)................................................................ 23

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) ........................................ 6, 13

*Teledyne Industries, Inc. v. NLRB,* 911 F.2d 1214, 1217–18 (6th Cir.1990).......................... 16, 17

*Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc)...................................... 18, 21

*Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) ..................................... 18

*Wood. v. Eubanks*, 25 F. 4th 414, 429 (6th Cir. 2022)................................................................ 20

*Woodlands Pride v. Paxton*, 694 F. Supp. 3d 820, 843 (S.D. Tex. 2023) ................................... 18

*Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 535 (S.D. Ohio 2020) ..................... 5

**Statutes**

42 U.S. §1983 ......................................................................................................................... 3

Tenn. Code Ann. § 7-51-1407 ("AEA") ..................................................................................... 2

**Rules**

Rule 12(b)(1).......................................................................................................................... 5

Rule 12(b)(6).......................................................................................................................... 5

v

## Introduction

Defendants separately move to dismiss Plaintiffs' Amended Complaint by arguing that Plaintiffs do not have standing and have failed to state claims upon which relief can be granted. Doc. 67 and Doc. 70. In so moving, Defendants mischaracterize Plaintiffs' claims ignore damning factual allegations in Plaintiffs' complaint which must be taken as true, and improperly invite the Court to engage in fact-intensive inquiries highly disfavored at this stage.

Plaintiffs have standing. They were concretely injured by Defendant Desmond's and Defendant Crisps' coercive efforts to stop the drag performances at the 2023 Blount Pride event and the event itself. As such, Plaintiffs are entitled to injunctive relief: Plaintiffs' future events will feature drag and must be protected from continued suppression efforts by Defendants who have shown a willingness to misuse their law enforcement authority to trample on Plaintiffs' First Amendment rights—including by threatening the third-party hosts of Blount Pride.

Lastly, Plaintiffs have adequately pleaded both of their claims for violations of their First Amendment rights for interference and retaliation. Defendant Desmond is not entitled to either absolute or qualified immunity because he was not acting to prosecute when he sent his threat letter, and he knew seeking to silence Plaintiffs was prohibited under decades of clearly established, precedential law. In any case, claims of immunity are fact intensive and rarely appropriate as grounds for dismissal at this stage. Defendants' Motions to Dismiss should be denied.

## Background

This case arises out of unconstitutional actions taken by Defendant Ryan K. Desmond, the District Attorney General for Blount County, and Defendant Tony Crisp, the Maryville City Chief

1

of Police, against Plaintiffs Blount Pride, a 501(c)(3) non-profit organization, and Matthew Lovegood, an artist who performs drag as the persona Flamy Grant. Am. Compl. ¶¶ 4, 8, 11, 14, 31, 37, 53-58. In the days leading up to September 2, 2023, Blount Pride and Matthew Lovegood prepared for the annual Blount Pride event—a celebration of the LGBTQ+ community that would feature drag performances. ¶ 32-35. Blount Pride publicly circulated materials promoting the event on social media. ¶ 38-39. The promotional materials included pictures of Plaintiff Lovegood's drag persona Flamy Grant. ¶ 39; Doc. 1-4.

Just four days before the Pride event, Blount Pride received a letter from Defendant Desmond. ¶ 31. The letter was sent to Plaintiff Blount Pride, the Blount County Mayor, local law enforcement (including Defendant Crisp), the Alcoa City manager, the Maryville City manager, and the event host, Maryville College. ¶31. In the letter, Desmond states he is putting the recipients "on notice" that he would consider prosecuting drag performances under the Adult Entertainment Act, Tenn. Code Ann. § 7-51-1407 ("AEA"), at the September 2 event. ¶ 31, 36. Desmond directly states that public concern regarding Blount Pride's "marketing" materials were the impetus for sending the letter. Doc. 1-3, ¶ 36.

During the same four-day period, Defendant Crisp also acted to stop Blount Pride. First, on August 28, 2023, he contacted Maryville College and requested to review the contract between Maryville College and Plaintiff Blount Pride. ¶ 53. The next day, Defendant Crisp called Bryan F. Coker, President of Maryville College, to verbally notify Mr. Coker of Defendant Desmond's threat letter. ¶ 54. Crisp then asked to set up a meeting between Maryville College representatives, Defendant Desmond, and himself. ¶ 55. Maryville's legal counsel arranged for a call between Desmond, Crisp, and President Coker on August 29, 2023. There, Crisp again warned Mr. Coker that officials at Maryville College could be arrested if they allowed Blount Pride to go forward—

2

that is, with drag performances, as promoted. ¶ 58.

Terrified, Plaintiffs immediately sought relief from this Court. ¶ 59; Docs. 1, 2. Plaintiffs pled as Count 1 in their original Complaint: "Violation of 42 U.S. §1983 under the First and Fourteenth Amendments—Free Speech." Doc. 1 at PageID 19. Under this Count, in addition to alleging that the AEA was unconstitutional, Plaintiffs alleged: "the Defendants seek to explicitly restrict or chill speech and expression protected by the First Amendment based on its content, its message, and its messenger." Doc. 1, ¶ 92. When praying for relief, Plaintiffs sought "a judgment declaring that Defendant Desmond violated Plaintiffs' rights under the First Amendment"— separate and apart from any declaration as to the constitutionality of the AEA. Doc. 1 at PageID 23. Plaintiffs also pled a First Amendment retaliation claim (Count 2) against Desmond. Doc. 1 at PageID 20.

The Court speedily issued a temporary restraining order on September 1, 2023. Doc. 22. The relief granted in the Order addressed not only the AEA but also Defendants' conduct. Defendants Desmond and Crisp (and other Defendants named at the time) were enjoined from "interfering with Blount Pride's festival, scheduled for September 2, 2023, by any means, including but not limited to, discouraging third parties including but not limited to the event venue, Maryville College, from hosting the event or making modifications to the event." Doc. 22 at PageID 494. Despite the TRO's clear injunction, however, Defendant Crisp continued to interfere with Blount Pride's 2023 event, removing Maryville police officers from providing security for the event at the last minute. Am. Compl. ¶ 68. Plaintiffs' counsel was forced to intervene with the City's legal department—and threaten to file a motion to find Crisp in contempt—in order to secure Maryville Police presence. Am. Compl. ¶ 70. Even with Maryville police present, counter-protestors were still allowed to enter the event, causing chaos and confusion. Am. Compl. ¶ 71-72.

3

Shortly thereafter, a jointly stipulated preliminary injunction was entered by this Court. Docs. 35, 43. Parties agreed at the time that the outcome of *Friends of George's, Inc. v. Mulroy*, 675 F. Supp. 3d 831 (W.D. Tenn. June 2, 2023) would likely be dispositive of the issues presented here. *Id.* On July 18, 2024, the Sixth Circuit issued its opinion in *Friends of George's*. 108 F. 4th 431 (6th Cir. 2024), petition for cert. filed (Dec. 23, 2024) (No. 24-676), confirming that the AEA did not even "arguably" proscribe the Plaintiffs' planned festival and performance. Am. Compl. ¶ 64 (citing *Friends of George's*, 108 F.4th at 436-40). Despite this "real world win"—a holding that the AEA almost certainly did not criminalize Plaintiffs' speech—Plaintiffs continued to be injured by Defendants' actions. Am. Compl. ¶ 73-76; *see Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 860 (6th Cir. 2024) (Murphy, J., concurring). In the summer of 2024, Maryville College declined to host Blount Pride's 2024 event—citing security concerns and increased costs due to the need for additional security. Am. Compl. ¶ 75.

Defendants have neither relented nor agreed not to interfere with Plaintiff's 2025 Pride event, which will feature the same drag performer. Am. Compl. ¶ 89-91. Thus, Plaintiffs now ask this Court to permanently enjoin the Defendants from taking any further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract—including, without limitation, by threatening to enforce the AEA against them—for promoting a drag performance, holding a drag performance, or hosting Blount Pride. Am. Compl. pg. 15. Plaintiffs also seek damages for retaliation from Defendant Desmond. Am. Compl. ¶ 94-106.

## Legal Standard

Defendants argue Plaintiffs' claims should be dismissed on two grounds. First, Defendants argue Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of standing. Second, Defendants argue Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a

4

claim upon which relief may be granted.

A motion to dismiss under Rule 12(b)(1) "may either attack the claim of jurisdiction on its face, or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc*., 410 F. 3d 879, 881 (6th Cir. 2005). When reviewing a facial attack to a complaint under Rule 12(b)(1) for lack of standing, courts must employ the same approach as reviewing a 12(b)(6) motion by "accept[ing] the allegations set forth in the complaint as true" while "drawing all inferences in favor of the plaintiff." *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) (quoting *Mosley v. Kohl's Dep't Stores, Inc.,* 942 F.3d 752, 756 (6th Cir. 2019)); *see also DLX Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Under Rule 12(b)(6), "the trial court must construe [the complaint] in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim." *Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 535 (S.D. Ohio 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotation omitted).

## Argument

I.  **Plaintiffs Have Adequately Pleaded a Claim that Defendants Desmond and Crisp Should Be Enjoined from Further Suppressing or Interfering with Plaintiffs' Protected Speech (Count 1).**

a.  **Plaintiffs have standing.**

Plaintiffs have standing to pursue their "interference" claim (Count 1) against Defendants Desmond and Crisp. "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,'

5

(2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, Plaintiffs have adequately alleged that Defendants, via a letter and pressure campaign, endeavored to silence Plaintiffs and interfere with their protected speech, causing them concrete injuries.

Injury-in-fact. In First Amendment cases where a plaintiff alleges that government action is suppressing speech, mere "subjective chill" is not enough to establish injury-in-fact. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). A litigant must usually show some "specific action on the part of the defendant." *Morrison v. Bd. of Educ. of Boyd Cnty.,* 521 F.3d 602, 609 (6th Cir. 2008) (gathering cases to illustrate requisite government action can include injunctions, long-term investigations, seizures of property). That specific action can include when government officials send threatening letters or otherwise make threats to take adverse action in order to suppress disfavored speech. *See, e.g., Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (commission engaged in "censorship" when it sent "notices" to publishers threatening criminal prosecution for published materials); *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) (First Amendment claims adequately pled where government official sent "guidance letters" to third parties in order to suppress plaintiff's speech); *Novak v. Cty. of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) (First Amendment claims adequately pled where police department sent letter to Facebook ordering removal of plaintiff's page and issued "press release threatening to take legal action" against plaintiff); *Rattner v. Netburn*, 930 F.2d 204, 210 (2d Cir. 1991) (First Amendment claim adequately alleged where village trustee sent coercive letter to newspaper publisher decrying plaintiff's recently published ad); *Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir.

1999) (First Amendment claim adequately alleged where attorney general threatened criminal enforcement via letter if union did not stop distributing handbill); *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (First Amendment claim adequately alleged where borough president sent threatening letter to billboard company displaying plaintiff's speech); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (First Amendment claim adequately alleged where sheriff sent letters on official stationery to credit card companies threatening criminal liability for continuing to contract with plaintiff); *Doyle v. James*, 733 F. Supp. 3d 191, 209 (W.D.N.Y. 2024) (First Amendment claim adequately alleged where attorney general sent letter threatening legal action against plaintiff group engaged in speech attorney general disfavored).

These claims of injury often travel under different labels, including "prior restraint," *Novak*, 932 F.3d at 433, "censorship," *Bantam Books*, 372 U.S. at 83, "coercion," *N.R.A.*, 602 U.S. at 189, and "interference," *Rattner*, 930 F.2d at 208. But the point is the same: "the First Amendment prohibits government officials from relying on the 'threat of invoking legal sanctions and other means of coercion ... to achieve the suppression' of disfavored speech. *N.R.A*, 602 U.S. at 189 (summarizing *Bantam Books*, 372 U.S. 58). Threats from governmental officials to third parties that host, publish, or otherwise further speech can similarly violate the First Amendment when the goal is to suppress disfavored speech. *Id.*; *see also Okwedy*, 333 F.3d at 344.

That the government official may not be able to make good on their threat is not dispositive. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 764 (6th Cir. 2019). "[T]he threat of punishment from a public official who *appears* to have punitive authority can be enough to produce an objective chill." *Id*. (citing *Bantam Books,* 372 U.S. at 68). Thus, even if the threat is empty, it can be enjoined. *Backpage.com*, 807 F.3d at 231 (7th Cir. 2015) ("Notice that such a threat is actionable and thus can be enjoined even if it turns out to be empty—the victim ignores it, and the threatener

folds his tent.").

Courts can consider several factors when weighing the government official's threat: (1) word choice and tone; (2) the existence of regulatory authority; (3) whether the speech was perceived as a threat; and, "perhaps most importantly, (4) whether the speech refers to adverse consequences." *N.R.A.*, 602 U.S. at 189 (listing various methods of analysis).

Here, Defendants' threat letter and pressure campaign constitute threats that may be enjoined. That their preferred statutory tool (the AEA) is no longer available is of little moment. *See Speech First*, 939 F.3d at 764; *N.R.A.*, 602 U.S. at 196 ("Nothing in [*Bantam*] turned on the [plaintiff's] compliance with state law.") *Id*.

Desmond's letter states that he first sought a "mechanism" to "enjoin" the Pride event before it occurred. Am. Compl. ¶ 46, 102; Doc. 1-3. After that effort proved unsuccessful, Desmond resorted to other tools—threats of enforcement and public pressure. He sent his letter not only to the targets of the threat, Plaintiff Blount Pride, but also to any law enforcement agency that could arrest Plaintiffs. Am. Compl. ¶¶ 31; Doc. 1-3. Desmond also sent his letter to third parties who could not enforce the AEA: the Blount County Mayor, the Alcoa and Maryville City Managers, the Director of Events for Maryville College, and the President of Maryville College. Am. Compl. ¶ 31; Doc. 1-3. What purpose could Desmond have in sending his letter to these recipients other than to encourage county-wide efforts to stop the Pride event and drag performances? And why include Maryville College—the third-party host of the protected speech? Desmond was amplifying his threat, sending a clear message: do not perform drag and do not help those who do. Am. Compl. ¶ ¶ 83-84, 93-93. At minimum, the Plaintiffs are entitled to the reasonable inference at this stage in proceedings that this was Desmond's purpose.

As the Supreme Court noted in *Bantam Books,* "People do not lightly disregard public

officers' thinly veiled threats to institute criminal proceedings against them if they do not come around [...]". 372 U.S. at 68. In *Bantam*, a statewide commission was found to have engaged in unconstitutional censorship of adult materials when it sent letters to publishers threatening possible prosecution under obscenity laws. *Id*. at 83. Specifically, the 'Rhode Island Commission to Encourage Morality in Youth' sent threatening "notices" to book publishers around the state "on official Commission stationery" alerting them that members of the Commission had reviewed their published materials and found them to be possibly criminally obscene. *Id*. at 60. Although the Commission itself lacked authority to prosecute obscenity violations, the notices included a reminder of the "Commission's duty to recommend to the Attorney General prosecution of purveyors of obscenity." *Id*. The Commission's notices were "invariably followed up by police visitations." *Id*. at 68-69.

Enter: Defendant Tony Crisp. The same day Desmond sent his "notice," Police Chief Crisp called Maryville College and asked to review their contract with Plaintiff Blount Pride. Am. Compl. ¶ 53. Then, after Maryville College received the letter, Crisp called President Coker to talk about it. ¶ 54. Crisp then had a meeting with President Coker and Desmond where Crisp further threatened arrest if the College hosted the event with drag performances included. ¶ 58. In all, Crisp called Maryville College administrators three times in two days—even reviewing the contract for the event—all to warn that drag performers and their hosts could be arrested.

Desmond muses in his letter that he could not find a "mechanism" of prior restraint. But it appears he found some version of it after all: a notice on his office's stationery to every key political actor in Blount County that he would enforce the AEA against Plaintiffs, followed by calls from the Chief of Police to Maryville College confirming the matter. Thus, through their word choice and tone, their expressed and implicit power to initiate criminal proceedings, and their explicit

threat of prosecution published to a wide audience, Desmond and Crisp clearly sought to censor Plaintiffs' speech. *N.R.A.*, 602 U.S. at 189.

Defendants' contrary arguments are unpersuasive. Despite Defendants' repeated insistence otherwise (Doc. 68 at PageID 723-24; Doc. 71 at PageID 761-62), Plaintiffs do not bring a pre-enforcement challenge to the AEA—or any challenge to the AEA. Defendant Desmond relies on *Glenn v. Holder,* 690 F.3d 417 (6th Cir. 2012), to claim that Plaintiffs cannot establish injury-in-fact where they "speculatively" fear "wrongful prosecution" under the AEA. Doc. 71 at PageID 761-63. But that case is inapposite here. Plaintiffs in *Glenn* challenged a criminal act without alleging, much less proving, "any express (or even implied) threat of official enforcement." *Glenn*, 690 F.3d at 424. The same is true of plaintiffs in *Friends of George's. See Friends of George's*, 108 F.4th at 440. Indeed, Defendant Desmond acts as though he never sent a letter threatening prosecution of "criminal statutes" against Plaintiffs, this Court never determined that letter communicated a credible threat, and Demond and Crisp were never ordered not to interfere with Blount Pride. But all these things happened here, and none of those facts exist in *Glenn* or *Friends of George's.*

Further, unlike the plaintiffs in *Glenn* and *Friends of George's*, Plaintiffs are not seeking a ruling that a statute is facially unconstitutional. *Glenn v. Holder*, 738 F. Supp. 2d 718, 720 (E.D. Mich. 2010), *aff'd,* 690 F.3d 417 (6th Cir. 2012); *Friends of George's*, 108 F.4th at 433.

Rather, Plaintiffs seek to enjoin Defendants' *conduct* that harms them. That the conduct involves making threats about enforcing the AEA appears to have Defendants confused. As the Supreme Court recently commented about *Bantam*: "Nothing in that case turned on the [plaintiff's] compliance with state law." *N.R.A.*, 602 U.S. at 196). Indeed, the applicability or validity of the statutes that are the subject of the government officials' threats were not at issue in *N.R.A.*, 602

10

U.S. at 175; *Bantam*, 372 U.S. at 58; or *Culinary Workers Union,* 200 F.3d at 614—among others. *Cf. also Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997) ("[Plaintiff's] failure to challenge the relevant [] ordinances does not obliterate his inalienable First Amendment rights. [Plaintiff's] First Amendment rights are guaranteed, absolute, and protected[...]While the [] ordinances are presumptively valid as they have not been challenged, [plaintiff's] § 1983 claims [for retaliation] are unaffected by his failure to challenge the constitutionality of the ordinances.").

Thus, the controlling issue here is whether Plaintiffs have adequately alleged some "specific action on the part of the defendant" that threatens Plaintiffs' protected expression. *Morrison,* 521 F.3d at 609. Plaintiffs have done so. Defendant Desmond sent a threatening letter to every key political figure in Blount County alerting them to the possibility of criminal prosecution of Plaintiffs under the AEA or other "criminal statutes." Doc. 1-3. He then transmitted his threatening letter to Maryville College to send a clear message: do not assist these drag performers. Defendant Crisp then made Defendants' threat to Maryville College overt, threatening them with actual arrest. This Court found this harm so sufficiently concrete that it ordered board interference-based injunctive relief. *See* Doc. 22 at PageID 494 (enjoining Defendants from "interfering with Blount Pride's festival, scheduled for September 2, 2023, by any means, including but not limited to, discouraging third parties including but not limited to the event venue, Maryville College, from hosting the event or making modifications to the event."). Plaintiffs have been injured in fact.

<u>Causal Connection.</u>  Plaintiffs' injury was caused by Defendants' actions. A plaintiff's injury may be direct or indirect. If indirect, "the complaint must indicate that the injury is indeed fairly traceable to the defendant's acts or omissions." *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 261, (1977) (cleaned up). Desmond sent his threat letter directly to Plaintiffs, the

11

event hosts, and many other County actors. Doc. 1-3. This letter caused objective chill to Plaintiffs' speech and required emergency injunctive relief.

Crisp's actions are "fairly traceable" to Plaintiffs' injuries. *Arlington Heights*, 429 U.S. at 261. First, Crisp argues that he never had direct contact with Plaintiffs—only Maryville College. Doc. 68 at PageID 731. As stated above, however, government actors can violate a speaker's First Amendment rights through coercion of third parties. *N.R.A.*, 602 U.S. at 191. "The analogy is to killing a person by cutting off his oxygen supply rather than by shooting him." *Backpage.com*, 807 F.3d at 231. "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *N.R.A.*, 602 U.S. at 191. Crisp's conduct could not be a balder threat of adverse action: he stated that Maryville College employees could face arrest if drag was performed at Blount Pride. Am. Compl. ¶ 58. Then, on the morning of the event, he pulled Maryville police officers from providing security at the event. ¶ 68. Both actions have resulted in Maryville College refusing to host another Blount Pride event, effectively cutting off Plaintiffs' "oxygen supply." *Backpage.com*, 807 F.3d at 231; Am. Compl. ¶ 74, 75. Like the sheriff in *Backpage.com*, Crisp acted to "shut down an avenue of expression of ideas and opinions" by pressuring a third party with legal enforcement. 807 F.3d at 230.

Crisp argues he was entitled to "presume that the AEA is constitutional and rely on its terms" when he was threatening Maryville College officials with arrest. Doc. 68 at PageID 734-35. Plaintiffs disagree. *See Sandul*, 119 F.3d at 1256 (6th Cir. 1997) (protected speech cannot serve as probable cause for violation of ordinance)—and the AEA did not even arguably apply to Plaintiffs' speech anyhow.

12

Moreover, even a threat of the *proper use* of a defendants' enforcement authority can violate a plaintiff's First Amendment rights when "a public-official defendant [] threatens to employ coercive state power to stifle protected speech." *Okwedy*, 333 F.3d at 344. Indeed, in *N.R.A.*, the N.R.A. did not allege that the defendant did not have the authority to take the actions she was threatening—she did. *N.R.A.*, 602 U.S. at 192. And that's what made her threats to third parties all the more threatening. *Id.* ("Generally speaking, the greater and more direct the government official's authority, the less likely a person will feel free to disregard a directive from the official.").

Crisp also shifts blame to Desmond, the prosecutor, as the real cause of any harm. Doc. 68 at PageID 730. But, the Sixth Circuit has recognized that direct participation by an individual in a constitutional violation can mean "encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). Crisp elides his role and ignores that he did all those things (encourage, authorize, and knowingly acquiesce in Desmond's threat) when he called Maryville College to repeat the content of Demond's letter—twice. Am. Compl. ¶ 54, 58. In sum, both Desmond and Crisp caused Plaintiffs' injuries.

Redressability. A plaintiff must show a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs' injury (as to Count 1) will be redressed by permanently enjoining the Defendants from taking any further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract—including, without limitation, by threatening to enforce the AEA against them—for promoting a drag performance, holding a drag performance, or hosting Blount Pride. Am. Compl. pg. 15; *see also Friends of the Earth, Inc. v.*

13

*Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 185–86 (2002) ("It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress.").

Defendants allege that injunctive relief is not warranted as the harm Plaintiffs suffered won't necessarily happen again. Doc. 68 at PageID 727, 732, and Doc. 71 at PageID 762 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). But Defendants ignore that (1) they were actively engaged in conduct to suppress Plaintiffs' speech at the time the complaint was filed, (2) that they are still enjoined "from taking any other action to enforce or threaten to enforce" the AEA now, Doc. 43 at PageID 536, and (3) that Defendant Crisp violated this Court's injunction after it issued, proving beyond reasonable dispute that Plaintiffs need this Court's protection to prevent recurring violations. Thus, unlike the plaintiff in *Lyons*, Plaintiffs seek to enjoin an unconstitutional practice that currently impacts them. *See Kardules v. City of Columbus,* 95 F.3d 1335, 1348 (6th Cir. 1996) (rejecting *Lyons*-claim and finding plaintiffs had standing when asserting ongoing government practice threatened right to vote).

That the harm Plaintiffs suffered is not happening at this moment is due solely this Court's intervention and still-in-effect preliminary injunction. Defendants also have made clear that they are eager to end that restriction. Instead of agreeing not to interfere with Plaintiffs' future events, or representing to this Court that they will not do so again, Defendants have moved to lift the Court's injunction, Docs. 59 and 67 at PageID 738-39. But even if Defendants voluntarily ceased their unconstitutional behavior or promised not to repeat it (they have done neither), the "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Friends of the Earth,* 528 U.S. at 189 (internal

14

quotations omitted). Defendants have done nothing to support that burden. If anything, Crisp especially has shown a willingness to threaten Plaintiffs' rights even when a court order is in place. Am. Compl. ¶ 68-71.

Any further issue Defendants take with the prospective relief Plaintiffs seek, Doc. 68 at PageID 726, is improperly raised in a Rule 12(b)(6) motion. *See, e.g., Kruse v. Repp*, 611 F. Supp. 3d 666, 724 (S.D. Iowa 2020) ("[T]he pleading of a claim entitling a plaintiff to relief under Rule 8(a)(2) is distinct from a request for a particular remedy under Rule 8(a)(3)—the former is subject to dismissal under Rule 12(b)(6) (i.e. 'failure to state a claim') while the latter is not."); *Moratorium Now! v. Detroit 300 Conservancy*, No. 15-CV-10373, 2015 WL 11005026, at *2 (E.D. Mich. July 22, 2015) (explaining that Rule 12(b)(6) permits seeking dismissal of a claim, not dismissal of a demand for relief).

### b. Plaintiffs' claims are not judicially estopped.

Desmond argues that Plaintiffs are estopped from asserting their interference claim because Plaintiffs no longer assert that the AEA is facially unconstitutional. Doc. 71 at PageID 766-767. But Plaintiffs retain viable First Amendment claims against Defendants, which have been fairly and equitably pleaded in an Amended Complaint filed as of right. Thus, Plaintiffs' interference claim should not be judicially estopped. *Cf. Bannister by Bannister v. Knox Cnty. Bd. of Educ.*, No. 3:18-CV-188, 2021 WL 2685193, at *4 (E.D. Tenn. June 30, 2021), *aff'd sub nom. Bannister v. Knox Cnty. Bd. of Educ.,* 49 F.4th 1000 (6th Cir. 2022) (denying judicial estoppel where plaintiffs took different position in second complaint before same court); *see also Sandul*, 119 F.3d at 1256 ("[Plaintiff's] failure to challenge the relevant [] ordinances does not obliterate his inalienable First Amendment rights.").

Plaintiffs did not prevail on prior position. "An essential element of judicial estoppel is that

the party had prevailed on its previous argument." *Dodge v. United States*, 162 F. Supp. 2d 873, 882 (S.D. Ohio 2001) (citing *Blachy v. Butcher*, 221 F.3d 896, 908 (6th Cir.2000); *Teledyne Industries, Inc. v. NLRB,* 911 F.2d 1214, 1217–18 (6th Cir. 1990) (observing that a party is not bound by an unsuccessful argument in a prior proceeding); *see also Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("A party is not bound to a position it unsuccessfully maintained."). As Defendant Desmond notes: "Plaintiffs had a full and fair opportunity to raise their arguments to the Sixth Circuit as intervenors." Doc. 71 at PageID 766.  Indeed, Plaintiffs did so and *did not prevail*. *See Friends of George's*, 108 F.4th at 436-40 (upholding facial constitutionality of AEA). Thus, Plaintiffs are not bound to any position the Sixth Circuit did not accept.

<u>Plaintiffs' position is not clearly inconsistent</u>. At all times, Plaintiffs have alleged that Desmond violated their First Amendment rights. Doc. 1, ¶ 92. Plaintiffs sought a declaration to that effect even in their original complaint. Doc. 1 at PageID 23.

The essence of Desmond's estoppel argument is that Plaintiffs no longer rely on a district court decision, *Friends of George,* 675 F. Supp. 3d 831, that has since been reversed. But Plaintiffs do not take a position on the facial constitutionality AEA in their Amended Complaint, and in any case, judicial estoppel is not warranted where a complainant has "arguably reconciled" their two positions. *MacKey v. Rising*, 106 F.4th 552, 567 (6th Cir. 2024). In *MacKey*, a case relied upon by Desmond to assert estoppel, the Sixth Circuit found estoppel was *not* warranted where, in the course of a case, defendant prevailed on one argument for preliminary relief then prevailed at summary judgment on a different argument in light of evidence uncovered during discovery. *Id*. Here, Plaintiffs' arguments for injunctive relief, like those in *MacKey*, necessarily evolved due to developments in the legal universe controlling the case, not because Plaintiffs claimed one set of facts and then another.

16

Unfairness. "A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008). Plaintiffs do not gain an unfair advantage in amending their Complaint as of right to eliminate a challenge to the AEA that the Sixth Circuit foreclosed. Plaintiffs' Amended Complaint was timely filed as of right shortly after the stay in this case was lifted. To date, no discovery has been conducted, so amendment cannot have caused any significant cost or delay. It is hardly unfair to allow Plaintiffs to seek available remedies for harms caused by Defendants.

"[T]he doctrine of judicial estoppel 'is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Lorillard Tobacco Co.*, 546 F.3d at 757 (quoting *Teledyne*, 911 F.2d at 1218). Granting judicial estoppel to forbid the Plaintiffs from pursuing valid claims in an Amended Complaint filed as of right would unjustly impede the truth-seeking function of this Court.

## II. Plaintiffs Have Adequately Pleaded a Claim that Defendant Desmond Unlawfully Retaliated Against Plaintiffs for Engaging in Protected Speech (Count 2).

### a. Desmond retaliated against Plaintiffs for engaging in protected speech

To allege retaliation, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). Plaintiffs posted promotional materials on social media, advertising for the Blount Pride event. Am. Compl. ¶ 38; Doc. 1-4. These materials featured Plaintiff Lovegood dressed in drag as

17

Flamy Grant. Am. Compl. ¶ 39. Desmond retaliated against Plaintiffs for these marketing materials, which featured drag, by sending a letter threatening criminal prosecution. Am. Compl. ¶ 101; *see also* Doc. 1-3 ("The Blount County District Attorneys Office is aware of a coming event planned for September 2, 2023, that is marketing itself in a manner which raises concerns that the event may violate certain criminal statutes within the State of Tennessee."). Plaintiffs reasonably feared Desmond's threatened actions and were deterred from continuing to promote and host a Pride event with drag performances without protection from this Court. Given these facts, Plaintiffs have adequately pleaded a retaliation claim against Desmond.

    Constitutionally Protected Activity. Defendant Desmond does not dispute that Plaintiff was engaged in protected speech—nor could he. Materials promoting charitable events or entities are afforded even more protection under the First Amendment than traditional commercial speech. *See, e.g., Jamison v. Texas*, 318 U.S. 413 (1943) (leaflets handed out by Jehovah's witnesses were protected speech); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) (charitable appeals for funds are afforded full protection under First Amendment). Even purely commercial speech receives strong protection. *See Bigelow v. Virginia*, 421 U.S. 809, 818 (1975). Drag is also protected speech. *See Woodlands Pride v. Paxton*, 694 F. Supp. 3d 820, 843 (S.D. Tex. 2023) (collecting circuit cases finding that "drag performances are expressive content ... afforded First Amendment protection").

    Adverse Action. An adverse action in the First Amendment context is one that "would deter a person of ordinary firmness from continuing to engage in [the constitutionally protected] conduct." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (en banc)). The court's analysis of the adverse action and its effect on the plaintiff must be tailored to the specific facts of the case. *See Fritz v. Charter Twp. of Comstock*,

592 F.3d 718, 724 (6th Cir. 2010). Private persons, unlike public employees, officials, or prisoners, only need to allege the "lower limit" of injury as they do not need to possess a greater order of "firmness" like a politician or public figure would. *Fritz*, 592 F.3d at 724. Moreover, "in a retaliation case, 'since there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great in order to be actionable.'" *Mezibov*, 411 F.3d at 721 (internal citations omitted). Indeed, "[a]ny adverse actions, other than 'those that create only de minimis negative consequences,' can 'offend the Constitution.'" *Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024) (quoting *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021)).

The appropriate formulation, then, for these circumstances is whether the actions of Defendant Desmond would be sufficient to deter an average citizen from publicly advertising for a Pride event and then hosting and performing drag at that event. The court need not engage in conjecture here: Desmond's threat letter, in fact, deterred average citizens from speaking. Plaintiffs sought protection of their First Amendment rights from this Court almost immediately after receiving Desmond's letter. Am. Compl. ¶ 59-60. This Court agreed that the extraordinary remedy of an emergency restraining order was necessary for Plaintiffs to continue their intended expression. Doc. 22 at PageID 484.

Nonetheless, Desmond claims that his letter was not sufficiently adverse. First, he again insists that the letter was just "a factually accurate letter" stating information that was "publicly available." Doc. 71 at PageID 772. This Court already rejected Demond's "paper tiger" theory, though. *See* Doc. 22 at PageID 489 (finding letter "firmly" constituted an enforcement warning letter). Second, even if the letter were a threat, Desmond hypothesizes, threats of prosecution do not satisfy the adversity requirement as "mere threats…are generally not sufficient to satisfy the

19

adverse action requirement." Doc. 71 at PageID 771 (quoting *Wood. v. Eubanks*, 25 F. 4th 414, 429 (6th Cir. 2022)). The full quote from *Wood* is:

> We have "emphasize[d] that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398. While "[m]ere threats ... are generally not sufficient to satisfy the adverse action requirement," *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004), **acts that are more than a "petty slight[ ] or minor annoyance[ ]" suffice**, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

*Wood,* 25 F.4th at 429 (emphasis added). The Sixth Circuit in *Wood* went on to find that removal from a public fair under police escort for wearing a "F-ck the Police" t-shirt constituted adverse action. *Id*. at 429. Again, "[a]ny adverse actions, other than 'those that create only de minimis negative consequences,' can 'offend the Constitution.'" *Josephson,* 115 F.4th at 787 (quoting *Kubala*, 984 F.3d at 1139). Certainly, being threatened with criminal prosecution for planning to engage in protected speech—in a letter to every major political figure in the County—is more than "a petty slight" or "minor annoyance." *Id*. It is more than a "mere threat" of civil litigation after repeated settlement offers, *Hornbeak-Denton v. Myers*, 361 F. App'x 684, 688 (6th Cir. 2010), or a "mere threat" of adverse employment actions like being assigned to less favorable work, *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004).

In *Fritz*, the Sixth Circuit held that "[a] person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged [his] employer to terminate the person's contract or to have [him] change [his] behavior." *Fritz*, 592 F.3d at 726. Desmond's letter is akin to the government officials' action in *Fritz*: by including Maryville College on the letter, Desmond was pressuring the event host to terminate its contract with Plaintiff Blount Pride. Because the adverse action inquiry is so fact intensive, though, "retaliation claims

20

based on all but genuinely inconsequential official actions should go to the jury." *Josephson,* 115 F.4th at 787 (internal quotation omitted).

<u>Causal Connection</u>. Lastly, to state a retaliation claim, plaintiffs must show "a causal connection between the protected conduct and the adverse action." *Thaddeus-X*, 175 F.3d at 399. This showing requires an inquiry into the subjective motivation of the defendant. *Id*. The Sixth Circuit has repeatedly noted that, at the pleading stage, "an official's retaliatory intent rarely will be supported by direct evidence of such intent." *Bloch¸* 156 F.3d at 682. "Accordingly, claims involving proof of a [defendant's] intent seldom lend themselves to summary disposition." *Id*.

Plaintiffs have adequately alleged, however, that Desmond sent the letter in direct response to Plaintiffs' speech (the marketing materials), which featured a drag performer. Am Compl. ¶ 37-43. As this Court wrote: "The record strongly, and maybe even conclusively, suggests that District Attorney Desmond issued his notice in response to Mr. Lovegood's inclusion on the festival's bill." Doc. 22 at PageID 487.

This fact has not changed since this Court's initial finding. Desmond's intent, then, is obvious. He reviewed materials that contained mere, non-obscene drag performers depicted, so he sent a letter saying, based on the depiction alone, he would prosecute any violations of the AEA at the event. *Id*. Thus, there is a strong causal connection between the marketing materials that feature drag (speech) and the letter (adverse action).

**b. Plaintiffs' retaliation claim is not barred by absolute immunity**

Desmond's next argument for dismissal is absolute prosecutorial immunity. But this argument fails because Defendant Desmond did not act as a "prosecutor" (as understood in the context of absolute immunity) when he sent his letter.[1] Accordingly, he cannot seek shelter in a

---

[1] Plaintiffs note that while Desmond was not acting as a "prosecutor" (that is, strictly within the role of a prosecutor engaged in the judicial process) in sending the letter, he was acting under the color of law as a government official.

21

defense that courts are "quite sparing" in granting in § 1983 litigation. *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 690–91 (6th Cir. 2020).

A prosecutor is only entitled to absolute immunity when he functions *as a prosecutor*. See *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 1993)) ("courts consider "[']the nature of the function performed, not the identity of the actor who performed it.'") That is, a prosecutor is only immune when he acts "as an advocate for the state" and engages in a function "intimately associated with the judicial phase of the criminal process." *Rieves*, 959 F.3d at 690–91 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–431 (1976)). Such functions can include participating in a probable cause hearing, *Burns v. Reed*, 500 U.S. 478, 492 (1991), filing an information, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), or preparing a witness for trial, *Higgason*, 288 F.3d at 878.

Although the law extends absolute immunity to prosecutors for administrative or investigative functions that relate to the "preparation for the initiation of a prosecution or for judicial proceedings," *Buckley*, 509 U.S. at 273, the doctrine was primarily created to free the "judicial process from the harassment and intimidation associated with litigation," *Burns*, U.S. 500 at 494 (citing *Forrester v. White*, 484 U.S. 219, 229 (1988))(denying prosecutor absolute immunity for advising police officers about probable cause to make arrest). Thus, a prosecutor cannot claim absolute immunity "where the role as advocate has not yet begun, namely prior to indictment, or where it has concluded." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003); *see also Buckley*, 509 U.S. at 275 ("A prosecutor neither is, nor should consider himself to be an advocate before he has probable cause to have anyone arrested.").

Unless a state official can show the doctrine is "justified for the function in question," *Burns*, 500 U.S. at 486, courts are "quite sparing" in granting absolute immunity in § 1983

litigation, *Rieves*, 959 F.3d at 691 (quoting *Buckley*, 509 U.S. at 269). Absolute immunity has been denied where a prosecutor provided legal advice to police officers about how to conduct an investigation, *Burns*, 500 U.S. at 492, advised police officers whether they had probable cause to make an arrest, *id*., assisted police in conducting investigative work, *Rieves*, 959 F.3d at 691; *Stockdale v. Helper*, 979 F.3d 498 (6th Cir. 2020), opined on the legality of certain conduct, *Rieves*, 959 F.3d at 691), or issued unapproved subpoenas, *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 913 (9th Cir. 2012).

In fact, censorial threats of legal sanctions are often *not* performed by prosecutors-suggesting that they are not traditional prosecutorial functions related to the "judicial process." *See, e.g., Okwedy*, 333 F.3d at 344 (finding plausible claim that borough president of Staten Island retaliated against speech); *Bantam Books*, 372 U.S. at 60; *Culinary Workers Union,* 200 F.3d at 618. The state official making threats does not even need to have the direct authority to prosecute. *Bantam Books*, 372 U.S. at 60; *Speech First*, 939 F.3d at 764.

Try as he might to suggest otherwise, Desmond was not engaged in "the judicial process," *Imbler*, 424 U.S. at 430–431, when he sent his threat letter to Plaintiffs, Maryville College, multiple law enforcement agencies, and elected officials. By his own admission, Desmond lacked probable cause to press criminal charges under the AEA at the time he sent the letter, meaning his "role as advocate ha[d] not yet begun" for purposes of absolute immunity. *Spurlock*, 330 F.3d at 799. Nor was Defendant Desmond preparing to initiate a judicial proceeding that would allow him to claim the administrative or investigative function exception. *Buckley*, 509 U.S. at 273. His letter references, at most, "a potential investigation into possible criminal conduct," Doc. 1-3, and his motion to dismiss concedes that "no particular prosecution decision had been reached." *See* Doc. 71 at PageID 766; Doc. 1-3 at PageID# 98. Indeed, Desmond describes his letter as just his

"prosecutorial position on the issues at hand." Doc. 1-3; Doc. 71 at PageID 772. But he sent this "prosecutorial position" to local law enforcement, while also communicating the date of the event (September 2), location (Maryville College) and identity of potential suspects (Blount Pride). "[I]f sufficient evidence is presented to this office that these referenced criminal statutes have been violated," Desmond writes, "our office will ethically and justly prosecute these cases in the interests of justice." Doc. 1-3. Such "legal advice" to police on how and when to conduct investigations of alleged criminal activity is clearly not covered by absolute immunity. *Burns,* 500 U.S. at 493–94; *see also Rieves,* 959 F.3d at 691. Even if Desmond's actions do not sit squarely within the category of legal advice, they certainly are not a part of the "judicial process."

Neither are threats of prosecution that occur before probable cause exists. Accordingly, Desmond's authorities regarding threats of prosecution are inapposite as they all involve prosecutors actually engaged in the judicial process. *See, e.g.*, *Myers v. Morris*, 810 F.2d 1437, 1444–46 (8th Cir. 1987) (prosecutors involved in sprawling child abuse investigation that ripened into criminal proceedings); *Allen v. Myers*, 2017 WL 8792715, at *1 (W.D. Mo. Nov. 27, 2017) (post-conviction complaint concerns prosecutorial conduct during a state criminal case); *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (prosecutors accused of threatening criminal charges during a larceny prosecution and appeal). His closest case on point, *Goldschmidt v. Patchett*, 686 F.2d 582, 584–85 (7th Cir. 1982), also fails: Even though that prosecutor wrote to the plaintiff to alert him of a criminal violation, he *did so with probable cause*, thereby acting as an advocate. *Goldschmidt*, 686 F.2d at 584 (advising plaintiff that advertisement "appeared to violate" the law). In contrast, by his own words, Desmond had not initiated any criminal proceedings—nor could he, as the conduct (drag at the event) had not yet occurred. Doc. 1-3.

24

Desmond's final plea to *Imbler* is also unavailing. *See Imbler*, 424 U.S. at 425–26 (courts have rejected attempts to "'forc[e]' prosecutors to 'answer in court each time [] a person charged [them] with wrongdoing."); Doc. 71 at PageID 768. *Imbler* stressed that absolute immunity is designed to protect prosecutors who "might refrain from presenting to a grand jury or prosecuting a matter which in their judgment called for action," *Imbler*, 424 U.S. at 437. In other words, it protects from the "harassment and intimidation associated with *litigation*." *Burns*, U.S. 500 at 494 (emphasis added). Here, there was no active litigation or ongoing or contemplated judicial process. Desmond wielded his power extrajudicially to violate clearly established constitutional rights, and granting absolute immunity would dovetail from the many instances that courts in this circuit have rejected this sweeping relief. The Court should reject Desmond's claims of absolute immunity.

### c. Plaintiffs' retaliation claim is not barred by qualified immunity

Defendant Desmond's claims of qualified immunity also fail. First, the Sixth Circuit disfavors qualified immunity at the motion to dismiss stage, as the fact-intensive inquiry would require the district court to determine whether precedent applies to an underdeveloped record in a complaint. The Court would have to wade into that ill-advised quagmire here. To survive qualified immunity at the 12(b)(6) stage, a party need only allege a plausible violation of a clearly established right, a hurdle that Plaintiffs clear. Second, even if the Court travels beyond the pleading requirements at the 12(b)(6) stage, Plaintiffs prevail on the merits. Defendant Desmond fails to cite an applicable case that shields his conduct here. He also contorts the facts in the Complaint to suggest this is a novel legal issue even though it is not. Accordingly, this Court should reject Defendant Desmond's request for qualified immunity and reserve this issue for when the record is further developed.

Qualified Immunity Inappropriate at Motion to Dismiss. It is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Siefert v. Hamilton Cnty.*, F.3d 753, 762 (6th Cir. 2020) (quoting *Courtright v. Cty. Of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). This is because the "fact-intensive nature" of qualified immunity is incompatible with accepting all reasonable inferences in a plaintiff's complaint. *Guertin v. State*, 912 F.3d 907, 817 (6th Cir. 2019). Qualified immunity asks a court to determine whether "the facts of this case parallel a prior decision" for purposes of clearly establishing a constitutional right. *Evans-Marshall v. Bd. of Educ. of Tipp Cty. Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring). However, "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is ... 'squarely governed' by precedent." *Id*.

Desmond Not Entitled to Qualified Immunity. Should the Court enter this factual thicket, Defendant Desmond's qualified immunity claim still fails. Qualified immunity asks this Court to determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) ... whether that right was clearly established." *McGlone v. Bell*, 681 F.3d 718, 735 (6th Cir. 2012) (quoting *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008)). Plaintiffs have adequately alleged a violation of their First Amendment rights via retaliation, *see* Section II(a), *supra*, and the right against retaliation by a government official by means of actual or threatened imposition of government power or sanction is clearly established.

Clearly Established Right. For a right to be "clearly established," the "constitutionality of the officer's conduct" must have been "beyond debate" in the "particular circumstances before him." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)). "[I]t [is] beyond debate that the First Amendment bar[s] retaliation for protected speech." *Josephson*, 115 F.4th at 789 (cleaned up). Case law has long established that public

officials violate the First Amendment when they "tr[y] to shut down an avenue of expression of ideas and opinions through 'actual or threatened imposition of government power or sanction.'" *See Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983) (finding it has long been clearly established that "implied threats to employ coercive state power to stifle protected speech" violate the First Amendment); *see also Backpage.com*, 807 F.3d at 230; *Okwedy*, 333 F.3d at 344; *Bantam*, 372 U.S. at 67; *Novak*, 932 F.3d at 433. Recently, relying on *Bantam*, a United States District Court denied qualified immunity from a claim of retaliation when an attorney general sent a threatening letter to a group hosting a political event with disfavored speech. *Doyle v. James*, 733 F. Supp. 3d 191, 209 (W.D.N.Y. 2024).

As argued above, Defendant Desmond knew his letter would constitute an improper, retaliatory threat based on clearly established law when he sent it. He cast lawful behavior as criminal to law enforcement agencies and an event sponsor who would be punished if they failed to obey. See *Okwedy*, 333 F.3d at 344; *Novak*, 932 F.3d at 432.

Though a court must "analyze the specific context of the case" to determine whether the "violative nature" of an official's "*particular* conduct" is clearly established, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), qualified immunity has never required a plaintiff to excavate an identical pattern of official wrongdoing, *see McGlone*, 681 F.3d at 735 (emphasis added) ("There need not be a prior case directly on point for a law to be clearly established; generalized statements of the law or a general constitutional rule already identified in the decisional law are sufficient."); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.").

Here, Desmond attempts, unsuccessfully, to argue that case law has not placed his "particular conduct" beyond debate. Specifically, he argues that 1) courts have never recognized threats of prosecution as an adverse action and that 2) there is no causal connection because prosecutors cannot retaliate against future speech. But he cherry picks from distinguishable authorities to make this first argument, and he is wrong: precedent clearly establishes that adverse actions include threats of coercive state power that chill speech, *see* Section I(a), *supra*, and that such threats can constitute retaliation when issued in response to protected speech, *see* Section II(a), *supra*. For his second argument, Defendant Desmond contorts the facts in the complaint to argue that Plaintiffs present a novel legal theory fatal under qualified immunity. This misdirection fails for an even simpler reason: The Court must accept *Plaintiffs'* allegations as true at this stage, not Defendant's version of them.

Violation of Constitutional Right: Adverse Action. Defendant Desmond relies on inapposite authority to argue that threats are inadequate adverse actions that deter a person of ordinary firmness. Doc. 71 at PageID 771. For instance, *Hornbeak-Denton*, 361 F. App'x at 687, involved a threat to sue from the Tennessee Wildlife Resources Agency during a "run-of-the-mill property dispute" with a plaintiff who previously criticized the agency's permitting process. But there, the Sixth Circuit stressed that plaintiffs alleged no "bad faith" by the TWRA and found that "TWRA asserted its property rights, indicated a willingness to review any documentation Appellants had in support of their conflicting claim, and ultimately stated its willingness to defend its rights ... if the parties could not settle their dispute." *Id.* at 688. Indeed, the circuit noted that while "[m]ere threats … are generally not sufficient ... [t]his is not a hard and fast rule, as there are no doubt stand-alone threats that would deter a person of ordinary firmness from exercising their protected rights." *Id.* at 689. As if keen on further helping Plaintiffs prove this point, Desmond also

cites *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012), which plainly states that threats of "a continuing government investigation" and threats that chill protected speech are adverse actions that would deter a person of ordinary firmness.

If the Court dives into the fact-intensive inquiry of qualified immunity at this stage— which, again, it need not, *see, e.g.*, *Novak*, 932 F.3d at 433 (declining to find whether facts of *Bantam Books* were "perfectly analogous for the rule to apply" because the court needed "more facts to determine whether the facts in this case are close enough")—it can safely conclude that precedent has placed the violative nature of this particular adverse action beyond debate.

<u>Violation of Constitutional Right: Causal Connection.</u> Desmond's final argument that Plaintiffs cannot establish causation between their speech and his letter because there is "no such thing as future-speech retaliation" mischaracterizes Plaintiffs' claims. Defendant Desmond insists Plaintiffs pled that he was primarily motivated to retaliate against their future speech (the drag show) as opposed to their past speech (the pre-show advertisements). *Id*. at PageID 774. Because retaliation against future speech would be a prior restraint analyzed under a different legal framework, Defendant Desmond argues, Plaintiffs have presented a novel legal retaliation theory that "cannot possibly be 'beyond debate' such that every reasonable officer would know that his actions were unlawful." *Id*. at PageID 774-75.

But this is simply not what Plaintiffs have said. To the contrary, Plaintiffs pled numerous times that Defendant Desmond sent his threat letter because of their pre-show advertising posts, which, by virtue of their content, also featured drag and announced their intent to perform drag. Am. Compl. ¶¶ 50, 95, 98, 99, 200. Defendant Desmond's letter admits as much, too. Doc. 1-3 (the prosecutor "is aware of a coming event … that is marketing itself in a manner that raises concerns."). Desmond did not retaliate simply because he disliked the promotional materials—it

29

was because the promotional materials featured disfavored speech (drag) and caused "concerns" about potential violations of the AEA.  Drag, then, had in fact already occurred: Desmond was staring at it when he saw Flamy Grant on the promotional materials. That his actions then chilled future speech (further drag at the Pride event) is an essential element of retaliation that Plaintiffs must plead—not some odd "prior restraint on future speech" claim. Once the veneer is stripped away, Defendant Desmond cannot dispute the causal connection between the retaliation and the speech. Because case law clearly prohibited his violative conduct, and Plaintiffs have adequately pled their rights were violated via retaliation, the Court should reject his bid for qualified immunity.

### Conclusion

"[T]he First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech [.]" *N.R.A.*, 602 U.S. at 198. Plaintiffs have adequately pleaded cognizable claims for relief based on Defendants Desmond and Crisp's unconstitutional efforts to suppress protected speech. Defendants' Motions to Dismiss should be denied.

Respectfully submitted,

/s/ Stella Yarbrough
Brice M. Timmons (TN #29582)
Craig A. Edgington (TN #38205)
WATSON BURNS, PLLC
5865 Ridgeway Center Parkway
Suite 300
Memphis, TN 38120
901-529-7996 – Telephone
901-877-4629 – Facsimile
btimmons@watsonburns.com
cedgington@watsonburns.com

Justin S. Gilbert, # 017079
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
justin@schoolandworklaw.com

30

Stella Yarbrough, BPR # 033637
Lucas Cameron-Vaughn, # 038451
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org

Daniel A. Horwitz, # 032176
Sarah L. Martin, # 037707
Lindsay B. Smith, # 035937
Melissa K. Dix, # 038535
HORWITZ LAW, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
(615) 739-2888
daniel@horwitz.law
sarah@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all parties of record via this Court's ECF filing system this 11th day of February, 2025.

/s/ Stella Yarbrough

31