# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| BLOUNT PRIDE, INC., and MATTHEW LOVEGOOD, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) No. 3:23-cv-00316 |
| v. | ) <br> ) |
| RYAN DESMOND, in his individual and official capacity as the District Attorney of Blount County, Tennessee, and TONY CRISP, in his official capacity as Maryville Police Chief, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT TONY CRISP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO DISSOLVE PRELIMINARY INJUNCTION**

Defendant Tony Crisp, in his official capacity as Chief of Police for the City of Maryville, Tennessee ("Chief Crisp"), hereby appears, by and through counsel, and for his Reply to the Plaintiffs' Response to his Motion to Dismiss and Motion to Dissolve Preliminary Injunction states as follows:

## LAW AND ARGUMENT

I. **The Plaintiffs' Response does not adequately address the claims and arguments raised by Chief Crisp in his underlying motion.**

The Plaintiffs' consolidated Response focuses collectively on the claims against both Defendants Desmond and Crisp. However, Plaintiffs make several noteworthy concessions or omissions in their briefing. <u>First</u>, Plaintiffs expressly acknowledge that they are not challenging the constitutionality of the AEA in their Amended Complaint. (Doc. 76, Page ID # 798) ("… Plaintiffs do not bring a pre-enforcement challenge to the AEA – or any challenge to the AEA").

1

For the purposes of evaluating the viability of the Plaintiffs' recast "interference" theory under the First Amendment, the AEA must be presumed valid. *E.g., Freed v. Thomas*, 81 F.4th 655, 660 (6th Cir. 2023).

Second, the Plaintiffs appear to acknowledge that their only cause of action is for First Amendment "interference" seeking injunctive relief against Defendants Crisp and Desmond in their individual capacities and for First Amendment Retaliation against Defendant Desmond in his individual capacity. Plaintiffs are not maintaining any independent Fourteenth Amendment claim.

Third, the Plaintiffs have not responded to Defendant Crisp's Motion to Dissolve the Preliminary Injunction. Jointly with his Motion to Dismiss, Defendant Crisp moved to dissolve the preliminary injunction entered against him. (Doc. 68, Page ID # 20-22). Plaintiffs acknowledge that Defendant Crisp has moved to dissolve the preliminary injunction (Doc. 76, Page ID # 802), but offer no response whatsoever to Crisp's Motion. A response that does not adequately address all of the grounds raised in the underlying motion constitutes waiver of opposition under Local Rule 7.2. *Smith v. SCI Tennessee Funeral Servs., LLC*, No. 3:21-CV-185, 2022 WL 19714598, at *2 (E.D. Tenn. Feb. 7, 2022) (citing E.D. Tenn. Local Rule 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."); *AK v. Behav. Health Sys., Inc.*, 382 F. Supp. 3d 772, 774 (M.D. Tenn. 2019) ("[W]hen a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded")). Waiver occurs "either by expressly conceding a point or by failing to respond to opponent's argument." *Frost v. Unum Life Ins. Co. of Am.*, No. 1:21-CV-269, 2023 WL 2261415, at *15 (E.D. Tenn. Feb. 14, 2023) (citing *Taylor v. Unumprovident Corp.*, No. 1:03CV1009, 2005

2

WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005)). Defendant Crisp's motion to dissolve the preliminary injunction entered against him is therefore uncontested and should be granted.

<u>Fourth</u>, as discussed in further detail in Section III below, the Plaintiffs' Response makes little effort to directly confront the arguments Chief Crisp has raised as to why the claims specifically asserted against him fail to state a claim and should be dismissed. The Response does not adequately meet the merits of Chief Crisp's arguments. There is no basis for any claim against Chief Crisp to continue.

**II.     The Plaintiffs have not established that they have standing to pursue their claims for prospective injunctive relief against Chief Crisp.**

As all the parties have acknowledged, to establish standing, a prospective plaintiff must show "(1) that he has suffered an 'injury in fact,' (2) that there is a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). Standing has been exhaustively briefed by all the parties, and Chief Crisp relies on his Brief on Standing (Doc. 63) and his Memorandum in Support of his Motion to Dismiss (Doc. 68) for discussion of foundational standing principals. Plaintiffs argue that they have asserted an injury in fact, that there is a causal connection between Chief Crisp's alleged actions and their injury in fact, and that their alleged injuries are redressable. They are incorrect on all three counts.

**First**, the Plaintiffs have not alleged an injury in fact. The Plaintiffs theory has changed markedly since the beginning of this case. Plaintiffs originally premised their cause of action on the unconstitutionality and invalidity of the AEA. (Doc. 1, Page ID # 19-23). This Court entered a temporary restraining order on the Plaintiffs' originally theory relying on the decision of the Western District in *Friends of Georges, Inc. v. Mulroy*, 675 F. Supp. 3d 831 (W.D. Tenn. 2023).

3

The original temporary restraining order was premised on the alleged unconstitutionality of the AEA and enjoined the Defendants from enforcing the AEA. (Doc. 22, Page ID # 494). Of course, the decision of the Sixth Circuit in *Friends of George's, Inc. v. Mulroy,* 108 F.4th 431 (6th Cir. 2024) established that the Plaintiffs would lack standing to bring a pre-enforcement challenge to the AEA. The Plaintiffs' new "interference" theory now claims that Defendant Desmond and Crisp, independent of the validity or invalidity of the AEA, should be enjoined from interfering with any future events organized by Blount Pride. (Doc. 64, Page ID # 690). The Plaintiffs' standing must be judged in light of the First Amended Complaint. Neither the Plaintiffs' original theory nor the temporary restraining order entered based on that original theory establishes an injury in fact or meets the injury in fact standard. Given the change of theory and the intervening decision of the Sixth Circuit in *Friends of George's*, this Court's previous entry of a temporary restraining order is frankly irrelevant for determining whether the Plaintiffs have established a pertinent injury in fact.

The Plaintiffs' revised theory is circuitous. They disclaim any intent to challenge the AEA. The AEA is therefore presumptively constitutional and valid. *See Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1366 (6th Cir. 1984). However, they ask this Court "to permanently enjoin the Defendants from taking any further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract—including, without limitation, by threatening to enforce the AEA against them—for promoting a drag performance, holding a drag performance, or hosting Blount Pride." (Doc. 76, Page ID # 792). And the Plaintiffs' primary complaint with respect to Chief Crisp is that he informed Maryville College leadership of Desmond's interpretation of the AEA and that, if criminal conduct under the AEA occurred, then the law would be enforced. (Doc. 64, Page ID # 683-684). In other words,

4

Plaintiffs maintain that Defendant Crisp violated their constitutional rights by informing Maryville College leadership that a presumptively valid criminal statute might be enforced if criminal activity occurred.

Plaintiffs rely heavily on the decisions of the United States Supreme Court in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) and *Nat'l Rifle Assn of Am. v. Vullo*, 602 U.S. 175 (2024) for the proposition that a governmental actor may violate the First Amendment by making concrete threats of adverse action against a third party with the intent to chill the speech of the plaintiff. In *Bantam Books*, the governmental agency sought to dissuade the distributor of certain allegedly inappropriate publications from continuing to sell or distribute those publications. In *NRA*, the New York Department of Financial Services sought to stop an insurer from providing insurance services to the NRA. Plaintiffs theorize that these and other similar cases support their theory against Chief Crisp. These cases are factually dissimilar, and do not support a finding of an injury in fact or a future entitlement to injunctive relief. *Bantam Books* predates applicable constitutional jurisprudence on 42 U.S.C. § 1983 and *NRA* was an individual capacity claim, which considered only whether a constitutional violation occurred. The issue of qualified immunity was remanded for further consideration, and there was no consideration of a request for prospective injunctive relief. Neither decision is factually analogous, nor does either decision (or any of the other cited authority) support Plaintiffs' claim of standing.

It is also important to contextualize the nature of the claims against Defendant Crisp. Chief Crisp is sued only in his official capacity. Plaintiffs do not seek money damages or nominal damages. Plaintiffs do not state a *Monell* claim. The only relief they seek with respect to Chief Crisp is a prospective injunction. Chief Crisp's alleged past actions are only relevant to the extent they can be construed to support an entitlement to future injunctive relief that is "actual or

5

imminent" to remedy a harm that is "concrete and particularized[.]" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016). Though Plaintiffs assert they have suffered an injury in the past as a result of Chief Crisp's actions (a proposition this Defendant does not concede), they must nonetheless establish an entitlement to future injunctive relief. Plaintiffs make little effort to establish a prospective entitlement to injunctive relief, or a concrete and particularized future threat of injury. Mere speculation and assumptions about how the government will act in a future, hypothetical scenario is insufficient to establish an injury in fact and meet the Article III standard. *Kanuszewski v. Michigan Department of Health and Human Services*, 927 F.3d 396, 410 (6th Cir. 2019); *see also Holman v. Vilsack*, 582 F. Supp. 3d 568, 579 (W.D. Tenn. 2022). The Plaintiffs have not shown that they have suffered an injury in fact.

**Second**, the Plaintiffs have not established a causal connection between Chief Crisp's action and their alleged injury. As discussed above, Plaintiffs allege that Chief Crisp informed Maryville College leadership of Desmond's letter[1] and cautioned that arrests could be made if conduct which violated the AEA occurred. Plaintiffs further allege that Chief Crisp considered withdrawing Maryville Police personnel from direct involvement with the event in light of this litigation and the temporary restraining order[2], but that communications with counsel resolved that issue with Maryville Police attending and providing security for the event as previously planned. (Doc. 64, Page ID # 685-686). Plaintiffs ultimately concede that police were present, but that they did not do an adequate job of providing security and failed to exclude counter-

---

[1] Plaintiffs claim that Chief Crisp attempts to "shift the blame" to Defendant Desmond. (Doc. 76, Page ID # 801). This is not true. Chief Crisp maintains that neither Defendant took any unconstitutional action of any kind. Chief Crisp merely emphasized the respective roles between a prosecutor, who analyzes applicable laws and makes prosecutorial decisions, and a law enforcement officer, who is entitled to presume that criminal statutes are valid and make neutral arresting decisions based on probable cause. (*See* Doc. 68, Page ID # 730-731).

[2] Chief Crisp obviously disputes that his actions on the day of the September 2023 event violated the temporary restraining order.

protesters. Plaintiffs are no doubt aware that the Maryville Police would subject themselves to potential constitutional liability if they excluded or removed counter-protestors from the event. *See, e.g., Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 254 (6th Cir. 2015); *McGlone v. Metro. Gov't of Nashville*, 749 F. App'x 402, 409 (6th Cir. 2018). These allegations, even if true, are immaterial for the standing inquiry. Plaintiffs have no constitutional right to be provided security services by the Maryville Police Department, and have no constitutional right to speak in a forum insulated from any counter-protestors or dissenting viewpoints.

Plaintiffs' causal connection must rise or fall based on the allegations regarding Chief Crisp's interactions with Maryville College. Again relying on *NRA* and similar decisions, the Plaintiffs argue that Chief Crisp's communications with Maryville College are sufficient to establish a causal connection even absent any direct interaction between Chief Crisp and the Plaintiffs. They allege that Chief Crisp's actions "have resulted in Maryville College refusing to host another Blount Pride event[.]" (Doc. 76, Page ID # 800). But this is not a conclusion supported by the allegations in the First Amended Complaint. It merely alleges that Maryville College declined to host the 2024 event due to "safety concerns and exorbitant security expenses." (Doc. 64, Page ID # 686). Chief Crisp made no demand that the expressive activity stop or that the event be cancelled; Maryville Police had already planned to provide security assistance for the event. (Doc. 64, Page ID # 685). It has already been established above that Plaintiffs' allegations regarding Chief Crisp's response to the temporary restraining order cannot form the foundation of a First Amendment action. And the First Amended Complaint does not even make a colorable allegation that Chief Crisp's conversations regarding the AEA specifically resulted in Maryville College declining to host the 2024 pride event or any future pride events. Chief Crisp did not effect any seizure, nor did he prevent the event from taking place.The

7

decisions cited by the Plaintiffs are not applicable; there is no causal connection between Chief Crisp's actions and the Plaintiffs' alleged injury in fact.

**Third**, as to redressability, the Plaintiffs alleged injury in fact would not be redressable by a favorable judgment. Once again, Plaintiffs seek only prospective relief against Chief Crisp. Perhaps recognizing this weakness in their case, Plaintiffs devote little time or energy towards establishing that they have a continuing injury in fact that would be redressable by prospective injunctive relief. "The threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (cleaned up) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."). Plaintiffs claims of potential future injury or further future interference with their expressive conduct are entirely speculative. Plaintiffs make essentially no direct response to Chief Crisp's arguments on this point. It is still not clear when or if future events will take place, where those events will be (and whether they would even take place within Chief Crisp's jurisdiction). (*See* Doc. 68, Page ID # 727). The claimed injury is not actual, imminent or impending; it is instead conjectural and hypothetical. *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024).

In Response, Plaintiffs make three arguments. First, they allege that Chief Crisp was "actively engaged in conduct to suppress the Plaintiffs' speech" when the complaint was filed. (Doc. 76, Page ID # 802). As explained in Section III below, Chief Crisp's actions did not result in a constitutional violation. But even if they did, this is immaterial for the purposes of showing a redressable need for prospective injunctive relief. Chief Crisp merely communicated that any

8

conduct that violated the AEA could result in enforcement of that criminal statute. If the Plaintiffs, as they allege, do not intend to violate the AEA, then there would be no danger of future enforcement action.

Second, the entry of a temporary restraining order based on Plaintiffs' previous theory does not support prospective injunctive relief on an entirely different theory. This has been discussed exhaustively, but the Plaintiffs obtained temporary injunctive relief based on the constitutionality and enforceability of the AEA; the Plaintiffs have never demonstrated an entitlement to temporary injunctive relief (nor relief of any kind) based on a more nebulous "interference" theory, and this Court's previous entry of a temporary restraining order does not forecast a need for future injunctive relief.

Third, Plaintiffs again incorrectly accuse Chief Crisp of "violating" this Court's temporary restraining order. This is simply wrong. Plaintiffs assert that communications occurred between counsel about the scope of the TRO and whether Maryville Police should continue to be involved in providing security services for the 2023 pride event as had been previously planned. Plaintiffs allege that this dispute was resolved between counsel, and that security services were provided. (Doc. 64, Page ID # 685-686). The Plaintiffs do not assert that they are constitutionally entitled to security services for their event by the Maryville Police (and those services were provided regardless). Ultimately, Plaintiffs simply claim Maryville Police did not do a good job of providing security for their event, and did not adequately exclude counter-protesters. These allegations are of no constitutional significance, and do not support a claim or entitlement to future injunctive relief.[3]

---

[3] Plaintiffs make the curious argument that a Rule 12(b)(6) motion is not proper because the Defendants seek only to dismiss one claim for relief, and therefore a motion under Rule 8(a)(3) motion would be proper. However, the only claim against Chief Crisp is for prospective injunctive relief. And Chief Crisp has already established that the First Amended Complaint does not state a claim against him. For

9

Ultimately, none of Plaintiffs' allegations are sufficient to support a claim for future injunctive relief against Chief Crisp. Plaintiffs' claims "rest[] on a speculative chain of possibilities that does not establish that their potential injury is certainly impending[.]"*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). If the Plaintiffs hold a future pride event, if that event takes place within the corporate limits of the City of Maryville, if they hold drag performances that do not violate the AEA, if Chief Crisp or his officers misconstrue and misapply the AEA to conduct that does not violate its terms, and if an arresting decision is made, only then would they arguably suffer an injury in fact. This type of hypothetical chain of reasoning is insufficient to establish a basis for standing. As of this filing, the Plaintiffs have not asserted a certain and particularized injury in fact that is redressable by prospective injunctive relief. The Plaintiffs lack standing, and their claims should be dismissed.

### III. The Amended Complaint fails to state any viable claim against Chief Crisp.

The Plaintiffs' Response does not directly address Chief Crisp's Rule 12(b)(6) arguments raised in Section II of his Memorandum in Support of his Motion to Dismiss and Motion to Dissolve Preliminary Injunction. (Doc. 68, Page ID # 732-738). Plaintiffs merely assert that they have standing. The Plaintiffs' Response is insufficient under Local Rule 7.2, and should be deemed a waiver of any opposition to the relief sought. *E.g.*, *Smith v. SCI Tennessee Funeral Servs., LLC*, No. 3:21-CV-185, 2022 WL 19714598, at *2 (E.D. Tenn. Feb. 7, 2022). The Plaintiffs' lack of a direct and sufficient response notwithstanding, even if the Plaintiffs have standing to sue, their First Amended Complaint does not state a claim against Chief Crisp.

---

avoidance of doubt, Chief Crisp seeks dismissal of all claims brought against him in the First Amended Complaint, and asserts both that the Plaintiffs lack standing and that their First Amended Complaint fails to assert any claim against Chief Crisp upon which relief can be granted.

It is worth emphasizing again the limited nature of Plaintiffs' suit against Chief Crisp. He has been sued only in his official capacity, and only for prospective injunctive relief. (Doc. 64, Page ID # 12-13). No *Monell* claim has been pled. No claim for compensatory or nominal damages has been pled. Chief Crisp has not been sued in his individual capacity, and the statute of limitations has expired. As a foundational aspect of the Plaintiffs' claims for prospective injunctive relief, they must prove a constitutional violation. Chief Crisp's actions did not violate the Plaintiffs' First Amendment Rights.

As discussed above, Plaintiffs allege two unconstitutional acts by Chief Crisp. The Defendant has already addressed the post-TRO actions in detail above. In short, Plaintiffs claim that there were discussions between counsel as to whether Maryville Police would participate in the 2023 pride event and provide security protection. Maryville Police ultimately participated, but Plaintiffs allege that they did not do a good job of protecting them and excluding counter-protestors. Plaintiffs have no constitutional right to police security services to shield them from adverse viewpoints nor do they have a constitutional right to be free from any exposure to counter-protestors. *See, e.g., Bible Believers*, 805 F.3d at 254. The government cannot exclude countervailing viewpoints form public spaces, even those deemed unwelcome or offensive. *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). The Plaintiffs' arguments turn the First Amendment on its head, and would punish Chief Crisp and his agency for complying with their constitutional obligations to individuals with countervailing viewpoints. These allegations do not state a claim for a violation of the First Amendment.

Turning to the Plaintiffs' allegations regarding Chief Crisp's communications with Maryville College ahead of the 2023 pride event, these allegations also do not support a claim for a violation of the First Amendment. Plaintiffs allege that Chief Crisp met with Maryville

11

College leadership, communicated the contents of Desmond's letter, and indicated that arrests could be made if conduct which violated the AEA occurred. Of course, no arrests were actually made, the AEA was never actually enforced. No law enforcement judgment was ever made if the activities at the 2023 pride event constituted a violation of the AEA. Plaintiffs have now abandoned their claim that the AEA is unconstitutional. Therefore, neither Chief Crisp nor any officer with the Maryville Police Department ever reached the stage of engaging in a probable cause determination or any evaluation of whether the activities that actually occurred at the 2023 pride event violated and AEA. And, since the filing of the original complaint, the Sixth Circuit has provided analysis and detail on the scope and meaning of the AEA which would likely impact future prosecutorial decisions. The Court can and should presume that the Defendants will act in accordance with the guidance given by the Sixth Circuit in *Friends of George's*.

Regardless, there are two important principles that impact the validity of this theory. First, the AEA is presumptively constitutional, and Plaintiffs no longer challenge its constitutionality. Plaintiffs make nothing more than a superficial response to Chief Crisp's detailed discussion on the presumption of constitutionality in his underlying Memorandum. *See Risbridger v. Connelly*, 275 F.3d 565, 573 (6th Cir. 2002); *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) ("A policeman's lot is not so unhappy…that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."); *Billiards & Brews, LLC v. City of Knoxville, Tennessee*, No. 3:23-CV-181, 2024 WL 4158038, at *7 (E.D. Tenn. Sept. 11, 2024) (discussing these legal principles in the context of qualified immunity and enforcement of COVID-19 curfew ordinances). The First Amended Complaint alleges only that Chief Crisp indicated that he would enforce state criminal law – a law which Plaintiffs no longer challenge. This does not violate the First Amendment.

Further, the legitimacy of any seizure (which never occurred) for First Amendment purposes would have been judged by whether probable cause existed for that seizure. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Of course, we have never reached that juncture because no seizure was ever effected. Instead, Plaintiffs ask this Court to presume that a seizure *might* have happened *if* conduct that violated the AEA occurred and/or *if* the Defendants misconstrued or misapplied the AEA. There is no recognized right to be free from arrest or prosecution under the First Amendment if that arrest or prosecution is supported by probable cause. *Novak v. City of Parma*, 932 F.3d 421, 429 (6th Cir. 2019). The First Amendment is not absolute. *Ashcroft v. Am. C.L. Union*, 535 U.S. 564, 573 (2002). It does not protect criminal conduct, nor is it a license to engage in conduct that violates criminal statutes. An officer may bear animus, but may legitimately arrest where the speech itself is criminal or constitutes evidence of a crime. *See Reichle v. Howards*, 566 U.S. 658, 668 (2012). Again, Plaintiffs have abandoned their challenge to the AEA, and cannot assault its validity by the back door. In short, they cannot on the one hand disclaim any intent to challenge the AEA while on the other hand argue that Chief Crisp would violate the First Amendment by enforcing or stating that he would enforce the AEA.

The Plaintiffs rely on a series of cases which generally stand for the proposition that a governmental official cannot threaten a third party with the intent and purpose of using that third party as a mechanism to chill the speech of the underlying plaintiff. These cases are inapposite. They do not involve similar procedural postures where only an official capacity claim has been pled, and they do not involve a circumstance where an official is enforcing a valid law which Plaintiffs do not challenge. Plaintiffs rely most heavily on *Nat'l Rifle Assn of Am. v. Vullo*, 602 U.S. 175 (2024), which dealt with a more concerted campaign of retaliatory regulatory inference and also did concern an individual capacity claim for damages rather than a claim for prospective

injunctive relief. Plaintiffs cite numerous out of circuit cases that apply differing standards and are neither helpful nor persuasive. Further, none of these cases involve the speculative request for future relief that the Plaintiffs raise here. Chief Crisp acted within his official authority in indicating that the AEA would be enforced if criminal conduct occurred. The Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted against Chief Crisp.

## CONCLUSION

For all the reasons set out herein, in Defendant Tony Crisp's Motion to Dismiss and Motion to Dissolve Preliminary Injunction and Memorandum in Support, and in Defendant Tony Crisp's Brief on Standing (Doc. 63), the Plaintiffs Blount Pride, Inc. and Matthew Lovegood lack standing to bring this action. Further, the First Amended Complaint fails to state a claim upon which relief can be granted with respect to Defendant Tony Crisp in his official capacity. The preliminary injunction should be dissolved. Defendant Tony Crisp's Motion to Dismiss and Motion to Dissolve Preliminary Injunction should therefore be granted, and an appropriate order should be entered.

RESPECTFULLY submitted this 18th day of February, 2025.

                        TONY CRISP, in his official capacity

                By: /s/ Brian R. Bibb
                     BENJAMIN K. LAUDERBACK, BPR No. 020855
                     BRIAN R. BIBB, BRP No. 031024
                     YASMINE LY PARKER, BPR No. 041846
                     WATSON, ROACH, BATSON & LAUDERBACK, P.L.C.
                     1500 Riverview Tower, 900 South Gay Street
                     P.O. Box 131
                     Knoxville, Tennessee 37901-0131
                     blauderback@watsonroach.com
                     bbibb@watsonroach.com
                     ylyparker@watsonroach.com

# CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. mail. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| Justin S. Gilbert<br>100 W. Martin Luther King Blvd, Suite 501<br>Chattanooga, TN 37402<br>justin@schoolandworklaw.com | Brice M. Timmons<br>Craig A. Edgington<br>Donati Law, PLLC<br>1545 Union Ave.<br>Memphis, Tennessee 38104<br>brice@donatilaw.com<br>craig@donatilaw.com |
| Stella Yarbrough<br>Lucas Cameron-Vaughn<br>Jeff Preptit<br>ACLU Foundation of Tennessee<br>P.O. Box 120160<br>Nashville, TN 37212<br>syarbrough@aclu-tn.org<br>lucas@aclu-tn.org<br>jpreptit@aclu-tn.org | Daniel A. Horwitz<br>Lindsay B. Smith<br>Sarah L. Martin<br>Melissa K. Dix<br>HORWITZ LAW, PLLC<br>4016 Westlawn Dr.<br>Nashville, TN 37209<br>daniel@horwitz.law<br>lindsay@horwitz.law<br>sarah@horwitz.law<br>melissa@horwitz.law |
| James Matthew Rice<br>Miranda Jones<br>Tennessee Attorney General's Office<br>P.O. Box 20207<br>Nashville, TN 37202-0207<br>matt.rice@ag.tn.gov | Adam K Mortara<br>Lawfair LLC<br>40 Burton Hills Blvd<br>Suite 200<br>Nashville, TN 37215<br>mortara@lawfairllc.com |

Dated this 18th day of February, 2025.

      /s/ Brian R. Bibb
      BENJAMIN K. LAUDERBACK, BPR No. 020855
      BRIAN R. BIBB, BRP No. 031024
      YASMINE LY PARKER, BPR No. 041846