UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BLOUNT PRIDE, INC., ET. AL.    )
                               )
v.                             )    No. 3:23-CV-316-JRG-JEM
                               )
RYAN K. DESMOND, ET. AL.       )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Ryan K. Desmond's First Motion to Dismiss and Dissolve Preliminary Injunction [Doc. 59], Defendant Tony Crisp's Motion to Dismiss for Failure to State a Claim [Doc. 67], Defendant Ryan K. Desmond's Second Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction [Doc. 70], and Plaintiffs' Joint Responses to these motions [Docs. 65 & 76]. After careful review of all parties' arguments, the Court is prepared to rule on these motions.

### I. BACKGROUND

This case stems from circumstances surrounding the 2023 Blount Pride Festival, hosted by Plaintiff Blount Pride at Maryville College, and the drag performance of Plaintiff Matthew Lovegood. This festival and performance were set to occur after the Tennessee General Assembly passed the Adult Entertainment Act (AEA) in 2023. The Act prohibited certain forms of adult-oriented entertainment that are harmful to minors "(A) on public property, or (B) in a location where the adult cabaret entertainment could be viewed by a person who is not an adult." Tenn. Code Ann. § 7-51-1407(c)(1) (2023). Some prohibited forms of entertainment include "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators or similar entertainers." *Id*.

In response to the passing of the AEA, an organization in Shelby County, Tennessee filed a federal lawsuit in the Western District of Tennessee. This suit alleged that the AEA was unconstitutional. *Friends of George's, Inc. v. Mulroy*, 675 F.Supp. 3d 831 (W.D. Tenn. 2023), rev'd and remanded sub nom. *Friends of George's Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024), *cert. denied*, 145 S.Ct. 1178, 221 L.Ed.2d 255 (2025). The Court agreed and issued a preliminary injunction preventing enforcement of the AEA in Shelby County. *Id*. at *38. During the period in which this preliminary injunction was in place, General Ryan Desmond, the District Attorney General in Blount County, Tennessee distributed a letter to several recipients including Plaintiff Blount Pride and Defendant Tony Crisp [First Am. Compl., Doc. 64, at 5].

This letter expressed General Desmond's assessment that the AEA was still enforceable in Blount County, as the preliminary injunction preventing its enforcement only applied to Shelby County [Compl., Doc. 1, Exhibit 3]. He made clear his intention to enforce the AEA and stated that "numerous communications from law enforcement, local officials, and concerned citizens" made him aware of the planned Blount Pride festival and that it was "marketing itself in a manner which raises concerns that the event may violate certain criminal statutes." [*Id*. at 1]. The letter goes on to reiterate the text of the AEA and inform the recipients that General Desmond intended to enforce the AEA only if, after investigation and evaluation of the relevant facts, his office concluded that a violation had occurred [*Id*. at 2-3].

After receiving this letter, Defendant Tony Crisp, the Chief of Police of the Maryville Police Department, contacted Maryville College to discuss the applicability of the AEA to the planned Pride Festival [Compl., Doc. 1, at 8]. Defendant Crisp spoke with Maryville College's counsel and informed them of his intention to enforce the AEA if any violations were to occur at the event [*Id*. at 9]. Following these communications, Plaintiffs filed their first complaint,

1

including two § 1983 claims [*Id.*]. These claims relied on the contention that the AEA is unconstitutional, and that Defendants violated Plaintiffs' First Amendment Rights by threatening to enforce it [*Id.*]. Further, plaintiffs requested injunctive relief to enjoin defendants from enforcing an unconstitutional statute against then [*Id.*].

After review, this Court granted Plaintiffs' request for a temporary restraining order, finding that plaintiffs had standing to bring their claim for a temporary restraining order, and that they showed a strong likelihood of success on the merits, probable irreparable harm if a temporary restraining order were not granted, and that a temporary restraining order would not result in substantial harm to others and would serve the public interest [Mem. Opinion and Order, Doc. 22]. Subsequently, the parties agreed to convert the temporary restraining order into a preliminary injunction preventing enforcement of the AEA, and agreed to stay the case until the Friends of George's appeal was decided in the Sixth Circuit [Stipulation to Prelim. Inj., Doc. 35].

This appeal was decided in July 2024. The Sixth Circuit reversed the decision of the United States District Court for the Western District of Tennessee, holding that the plaintiff lacked standing to bring a constitutional challenge to the AEA. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1178, 221 L.Ed. 2d 255 (2025). The Court of Appeals reasoned that (1) Friends of George's planned conduct was not arguably proscribed by the AEA, (2) that even if it was, Friends of George's had no constitutional interest in presenting indecent material to minors, and (3) in any event, Friends of George's had not shown a "certainly impending threat of prosecution" that would amount to an injury-in-fact for standing purposes. *Id*.

Following this decision, the parties in the instant case were ordered to brief the Court on whether the decision in *Friends of George's* required dismissal of this case [Order, Doc. 54]. The parties agree that the *Friends of George's* decision prevents plaintiffs from bringing a constitutional

2

challenge to the AEA. However, plaintiffs filed an amended complaint which omitted their original constitutional challenge to the AEA and instead pursues relief on an "interference" and retaliation claim under § 1983 [First Am. Compl., Doc. 64]. In short, plaintiffs claim that defendants unconstitutionally interfered with their First Amendment Rights by threatening prosecution of the AEA against them, and that Defendant Desmond retaliated against plaintiffs for exercising their First Amendment Right to engage in free speech in the context of advertising Mr. Lovegood's planned drag performances [*Id.*].

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal of a complaint for failure to state a claim upon which relief may be granted. The propriety of dismissal under Rule 12(b)(6) is a question of law. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). When reviewing a motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the non-moving party, accept the well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327*, 336 (6th Cir. 2007) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "detailed factual allegations." *Twombly*, 550 U.S. at 555. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (cleaned up).

3

### III. ANALYSIS

**1. Defendant Ryan K. Desmond's First Motion to Dismiss**

As an initial matter, Defendant Desmond filed a Motion to Dismiss and Dissolve Preliminary Injunction after the decision in *Friends of George's*, but before plaintiffs filed their amended complaint [Mot. to Dismiss and Dissolve Prelim. Inj., Doc. 59]. General Desmond's First Motion to Dismiss and Dissolve Preliminary Injunction relies on arguments made by plaintiffs in their original complaint that have been omitted from their amended complaint. As a result, Defendant Desmond's First Motion to Dismiss is **DENIED AS MOOT**.

**2. Defendants' Motions to Dissolve Preliminary Injunction**

In addition to their motions to dismiss, both defendants have moved the Court to dissolve the existing preliminary injunction because the basis for the injunction has now been invalidated by the Sixth Circuit's decision in *Friends of George's v. Mulroy*. The Court agrees. The Court granted plaintiffs' request for a temporary restraining order in September 2023 [Mem. Opinion and Order, Doc. 22]. Relying on plaintiffs' original complaint and adopting the reasoning of District Judge Thomas L. Parker in *Friends of George's*, the Court determined that plaintiffs had successfully demonstrated their entitlement to a temporary restraining order and granted their motion [*Id.*].

Thereafter, the parties entered a stipulation to a preliminary injunction, converting the previously granted temporary restraining order into a preliminary injunction [Stipulation to Prelim. Inj., Doc. 35]. The stipulation acknowledged that the basis for the injunction rested upon plaintiffs' challenge to the constitutionality of the AEA and that *Friends of George's* involved the same or substantially similar legal issues [*Id.*]. The parties agreed that the preliminary injunction should

continue until 21 days after a mandate in the *Friends of George's* appeal was issued, unless the Court extended it [*Id*.].

Certainly, 21 days have passed since the mandate was issued in *Friends of George's* on July 18, 2024, and this Court did not enter an order extending the preliminary injunction. Therefore, the injunction was dissolved 21 days after the mandate was issued in *Friends of George's*, and defendants' motions to dissolve the preliminary injunction are moot. Even if the preliminary injunction has not been dissolved, *Friends of George's* forecloses plaintiffs' constitutional challenge to the AEA, which the preliminary injunction relied upon, for lack of standing. See generally *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024).

Because the preliminary injunction, according to its own terms, was dissolved 21 days after the mandate in *Friends of George's* was issued on July 18, 2024, defendants' motions to dissolve the preliminary injunction are **DENIED AS MOOT**.

### 3. Defendant Ryan K. Desmond's Second Motion to Dismiss

Now the Court will turn to Defendant Ryan K. Desmond, Blount County District Attorney's Second Motion to Dismiss. In his motion, General Desmond presents several theories as to why the Court should dismiss Plaintiffs' amended complaint for failure to state a claim. First, he claims that in light of *Friends of George's*, plaintiffs lack standing to bring their claims against him [Mot. to Dismiss, Doc. 70]. Second, he claims that even if plaintiffs have standing to bring their claims, he is protected by prosecutorial immunity [*Id*.]. Lastly, he offers that if prosecutorial immunity does not apply, he is protected by qualified immunity [*Id*.]. The Court rejects his argument that he is protected by prosecutorial immunity, but agrees that plaintiffs lack standing and, in any event, General Desmond is protected by qualified immunity.

5

## I. Plaintiffs lack standing to pursue injunctive relief and to bring § 1983 claims.

Before evaluating the merit of plaintiffs' claims for both injunctive relief and damages under § 1983, it is vital to determine whether plaintiffs have standing to bring those claims. Three requirements must be shown for a plaintiff to have standing: (1) an "injury in fact", (2) "a causal connection between the injury and the conduct complained of", and (3) a likelihood that the injury "will be 'redressed by a favorable decision'." *Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In the pre-enforcement context, further evaluation is required to determine whether an injury is imminent. Courts must evaluate whether the party seeking to invoke federal jurisdiction has demonstrated (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest", (2) their "intended future conduct is 'arguably…proscribed by the statute' at issue", and (3) that the "threat of future enforcement… is substantial." *Id* at 398. (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 134 S. Ct 2334, 189 L.Ed.2d 246 (2014)).

In *Friends of George's*, the Sixth Circuit applied this framework to plaintiffs' challenges to the constitutionality of the AEA. See generally *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431(6th Cir. 2024). There, a Memphis-based theater company that performs drag sought to enjoin the enforcement of the AEA, which they argued was unconstitutional, in the District Court for the Western District of Tennessee. *Id*. That Court found that the plaintiff had standing and ultimately declared the AEA unconstitutional. *Id*. The case was appealed to the Sixth Circuit, which determined that plaintiffs lacked standing because their planned conduct was not "arguably proscribed by the AEA" and that as a result, plaintiffs did not meet the *Susan B. Anthony List v. Driehaus* requirements for pre-enforcement standing. *Id* at *6.

The AEA prohibits "adult cabaret entertainment: (A) on public property; or (B) in a location where the adult cabaret entertainment could be viewed by a person who is not an adult." Tenn. Code Ann. § 7-51-1407(c)(1) (2023). The Sixth Circuit acknowledged that the term "adult cabaret entertainment" was new to Tennessee law, but that the "legislature defined that statutory phrase by reference to existing Tennessee law". *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 at *3. The legislature defined "adult cabaret entertainment" as "adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901, and that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." Tenn. Code Ann. § 7-51-1401(3)(A) (2023). The text incorporates by explicit reference the following definition of harmful to minors:

> that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:
>
> (A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;
>
> (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and
>
> (C) Taken as whole lacks serious literary, artistic, political or scientific values for minors.

Tenn. Code Ann. § 39-17-901(6) (2023)

The Sixth Circuit compared Friends of George's planned activities to the definitions above and found that they did not involve (1) adult-oriented performances lacking serious literary, artistic, political, or scientific value for a reasonable 17 year old that (2) featured topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers that were performed (3) in public and/or where minors may view them. See generally *Friends of*

7

*George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024). In sum, Friends of George's planned drag performances did not involve adult cabaret entertainment that was harmful to minors and therefore, their activities were not arguably proscribed by the AEA. Because plaintiffs could not meet this requirement to achieve pre-enforcement standing, the Sixth Circuit ruled that the plaintiffs lacked standing to bring their claims, reversed the ruling of the District Court, and instructed that the case be dismissed. *Id*.

The analysis of the instant case is more straightforward. Plaintiffs' amended complaint states, several times, that Mr. Lovegood's performance at the 2023 Blount Pride Festival did not arguably violate the AEA, nor do any planned future performances [First Am. Compl., Doc. 64, at 14]. By plaintiffs' own admission, they do not meet the threshold requirements for pre-enforcement standing because their intended future conduct is not arguably proscribed by the statute. Since all requirements for pre-enforcement standing as proscribed by *Susan B. Anthony v. Driehaus* must be met for plaintiffs to have standing, plaintiffs' failure to meet even one of those requirements results in a finding that they lack standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149. Yet, in the interest of thoroughness, the Court will address the remaining requirements accordingly.

As discussed, plaintiffs have failed to show that their intended future conduct is arguably proscribed by the AEA. However, even if plaintiffs had made such showing, they cannot show that they possessed a constitutional interest in exhibiting indecent material to minors that would have been arguably proscribed by the AEA. See *Friends of George's,* 108 F.4th 431 (6th Cir. 2024). Therefore, plaintiffs fail to meet this requirement as well.

Lastly, even if plaintiffs had met the two requirements discussed above, they cannot show that the threat of future enforcement was or is substantial. In the context of this requirement, the Court will rely on its previous finding that General Desmond's letter was not merely a "paper tiger"

and could have been construed as a threat of prosecution [Mem. Opinion and Order, Doc. 22, at 10]. Even so, General Desmond states in several ways throughout his letter that no facts or evidence will be prematurely evaluated, that only after review of the evidence will his office reach a prosecution decision, and that it is "certainly possible" that the pride festival and Mr. Lovegood's performance would not violate any criminal statute [Compl., Doc. 1, Exhibit 3 at 1-3]. This language evidences General Desmond's uncertainty of the scope of the AEA as it was still the subject of litigation, and that he had not made any decision regarding the criminality of the proposed conduct. While this letter may constitute a threat of prosecution, it appears to the Court that this threat of enforcement was uncertain and not substantial. As a result, plaintiffs fail to meet the final requirement for pre-enforcement standing.

## II. General Desmond is Not Protected by Prosecutorial Immunity, but by Qualified Immunity.

In his memorandum in support of his motion to dismiss, General Desmond offers both prosecutorial immunity and qualified immunity as grounds for dismissal. While the Court disagrees with the theory that his actions are protected by prosecutorial immunity, it agrees that qualified immunity applies.

### A. Prosecutorial Immunity

In support of his argument that his actions are protected by prosecutorial immunity, General Desmond offers non-binding case law from different circuits [Mem. in Support of Mot. to Dismiss, Doc. 71 at 11]. Those cases have recognized threats of prosecution and advisory letters as "intimately associated with the judicial phase of the criminal process", which is required for prosecutorial immunity to apply. See *Imbler v. Patchman*, 424 U.S. 409 (1976). However, plaintiffs

9

correctly point to *Spurlock v. Thompson* in their response to General Desmond's motion, a case which is binding on this Court [Resp. in Opposition, Doc. 76, at 22]. In *Spurlock*, the Sixth Circuit held that absolute prosecutorial immunity does not apply "where the role of an advocate has not yet begun, namely prior to indictment, or where it has concluded." *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003). This Court is also bound by *Burns v. Reed*, in which the Supreme Court held that giving legal advice to police in the "investigative phase of a criminal case is not so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute prosecutorial immunity." *Burns v. Reed*, 500 U.S. 478, 485 (1991). The Supreme Court also noted that while "almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Id*.

In this case, General Desmond sent a letter, whether it be interpreted as a threat or advisory letter, outlining his intention to enforce the AEA if conduct at the Pride Festival was to violate it. Looking to *Spurlock*, not only were General Desmond's actions prior to an indictment, but no conduct had even occurred for him to investigate whether he would prosecute. Further, looking to *Burns*, the Court concludes that his actions are even less associated with the conduct which the Supreme Court declined to extend absolute prosecutorial immunity to. In *Burns*, a prosecutor gave legal advice to police *after* an investigation had begun. Here, no investigation or prosecution had commenced at the time General Desmond sent his letter. In fact, he points out in his letter that only after the planned conduct occurs will he evaluate the evidence and possibly initiate a prosecution. Considering binding precedent, the Court cannot find that these actions were so "intimately associated with the judicial phase of the criminal process" that they may be protected by absolute prosecutorial immunity.

10

Case 3:23-cv-00316-JRG-JEM Document 84 Filed 10/24/25 Page 11 of 19 PageID #: 897

B. Qualified Immunity

General Desmond offers qualified immunity as an alternative defense to his actions. The Court agrees that even if plaintiffs had standing to bring their claims, General Desmond is protected from suit by qualified immunity.

Government officials enjoy qualified immunity when performing discretionary functions. *Anderson v. Creighton*, 483 U.S. 635 (1987). Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a qualified immunity defense, plaintiffs must show that defendant violated a right that was "clearly established at the time of the challenged actions." *Mitchell v. Forsyth*, 472 U.S. 511 (1985). This requires a showing of both (1) the violation of a constitutional right, and (2) that the constitutional violation was "clearly established" under binding authority. *Latits v. Phillips,* 878 F.3d 541, 552-53 (6th Cir. 2017). For a right to be clearly established, it must be sufficiently clear that "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). *Reichle* goes on to state that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

Because plaintiffs claim that General Desmond retaliated against them for distributing constitutionally protected "marketing materials" that advertised a "First Amendment protected activity", the Court must first determine whether retaliation occurred. To prove a retaliation claim, plaintiffs must show that (1) they engaged in speech protected by the First Amendment, (2) the defendant took adverse action against them that would chill a person of ordinary firmness, and (3)

11

there is a causal connection between the protected conduct and the adverse action. *DeCrane v. Eckart*, 12 F.4th 586, 593 (6th Cir. 2021).

This analysis begins with the first prong, that plaintiffs engaged in speech protected by the First Amendment. This Court agrees with plaintiffs that advertisements are protected by the First Amendment. See *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), stating "There is no longer any room to doubt that what has come to be known as 'commercial speech' (advertisements) is entitled to the protection of the First Amendment,". Although plaintiffs meet the first requirement to state a claim of retaliation, their argument fails on the second prong.

Next, plaintiffs must show that General Desmond took an adverse action against them that would chill a person of ordinary firmness. Here, plaintiffs have not shown that General Desmond's letter constitutes an adverse action in the context of a retaliation claim.

For an action to be considered adverse in this framework, the Sixth Circuit has required that the action "deter a person of ordinary firmness from exercising protected conduct". *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 584 (6th Cir. 2012). It further emphasizes that "it trivializes the First Amendment to allow plaintiffs to bring … claims for *any* adverse action [,] no matter how minor." *Id*., quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). The Sixth Circuit has also held that some specific actions do not constitute an adverse action, specifically that "while mere threats … are generally not sufficient to satisfy the adverse action requirement, acts that are more than a 'petty slight or minor annoyance' suffice". *Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022).

12

Case 3:23-cv-00316-JRG-JEM Document 84 Filed 10/24/25 Page 13 of 19 PageID #: 899

Here, the Court construes General Desmond's letter as a "mere threat" at worst, which is "generally not sufficient to satisfy the adverse action requirement." *Id*. Throughout the letter, he emphasizes that no facts or evidence would be prematurely evaluated and that it is "certainly possible" that the planned conduct would not violate any criminal statutes [Compl., Doc. 1, Exhibit 3 at 3]. Further, the majority of the letter discusses his stance on his ability to enforce the AEA while it was still the subject of litigation, not that he planned to prosecute plaintiffs [*Id*. at 1-2]

The only consequence that could flow from the distribution of this letter is that plaintiffs could be prosecuted if criminal conduct occurred. This should not have been news to plaintiffs. District Attorneys, such as General Desmond, are obligated to enforce the criminal law of their state. Because the AEA had not yet been declared unconstitutional in a manner that bound General Desmond, he was entitled to enforce the statute as written by the legislature. His letter to plaintiffs reiterated this right and did not shut down the event, did not require plaintiffs to omit the planned drag performance, did not impose sanctions, or otherwise physically deter the event. His letter boils down to the belief that plaintiffs' advertised, planned conduct **may** violate a Tennessee statute, which General Desmond is entitled to enforce if he finds that a violation has occurred. Even if the letter constituted more than a "mere threat" or a "petty slight or minor annoyance", the Court finds that the letter, absent any attempts to shut down or otherwise prevent plaintiffs from hosting the Pride Festival, would not chill a person of ordinary firmness.

As a result, plaintiffs have not met their burden of showing that General Desmond retaliated against them for exercising a constitutional right. Consequently, they cannot show that General Desmond violated a clearly established constitutional right. Therefore, General Desmond's actions are protected by qualified immunity and plaintiffs' claims against him must be **DISMISSED** as a result.

13

Case 3:23-cv-00316-JRG-JEM    Document 84    Filed 10/24/25    Page 14 of 19
PageID #: 900

C. Dismissal of Claims against Defendant Ryan K. Desmond

Because plaintiffs have failed to show that they have standing to bring their pre-enforcement, injunctive relief claims for interference against General Desmond, and they have failed to show that General Desmond violated a constitutional right that would overcome qualified immunity, plaintiffs' claims against General Ryan K. Desmond in both his official and individual capacity are **DISMISSED** with prejudice.

4. **Defendant Tony Crisp's Motion to Dismiss for Failure to State a Claim**

The Court will now turn to Defendant Tony Crisp's Motion to Dismiss the First Amended Complaint for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) [Doc. 67]. Defendant Crisp argues that plaintiffs lack standing to pursue injunctive relief preventing him from "interfering" with their future planned events and from enforcing the AEA against them [Mem. in Support of Mot. to Dismiss, Doc. 68]. The Court agrees.

A. Plaintiffs Lack Standing to Bring Claim for Injunctive Relief Against Defendant Crisp

Defendant Tony Crisp, Chief of the Maryville Police Department, begins his argument by noting that under *Friends of George's*, plaintiffs lack authority to challenge the constitutionality of the AEA directly [*Id*. at 5]. Plaintiffs concede as much and abandon their constitutional claim against the AEA in their First Amended Complaint. However, Crisp argues, plaintiffs' First Amended Complaint seeks a "functional" declaration that the AEA is unconstitutional as they ultimately ask the Court to enjoin both Defendant Crisp and Defendant Desmond from enforcing it against them in the future. The Court agrees with Chief Crisp's assessment.

As previously discussed, three requirements must be shown for a plaintiff to have standing: (1) an "injury in fact", (2) "a causal connection between the injury and the conduct complained of",

14

and (3) a likelihood that the injury "will be 'redressed by a favorable decision'." *Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). An "injury" in the context of standing must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010). In *Monsanto*, the Supreme Court goes on to emphasize that "allegations of possible future injury" are not sufficient. *Id*.

Here, plaintiffs seem to allege that Chief Crisp's past actions, speaking with Maryville College regarding the possible implications of the AEA and his original decision to pull Maryville Police from providing security at the event, are evidence of possible "further adverse action against the Plaintiffs." [First Am. Compl., Doc. 64, at 11, 13]. On this basis, plaintiffs seek an injunction preventing Chief Crisp from interfering with future events. [*Id*. at 13]. However, plaintiffs' "injury" is exactly the kind of speculative "allegation of a possible future injury" that the Supreme Court has deemed insufficient to establish standing.

Plaintiffs do not elaborate on what kind of injury they seek to avoid through injunctive relief. They seek injunctive relief to prevent any "further adverse action against the Plaintiffs or anyone with whom the Plaintiffs contract – including, without limitation, by threatening to enforce the AEA against them – for promoting a drag performance, holding a drag performance, or hosting Blount Pride." [*Id*.]. Aside from threatening to enforce a statute that has not yet been deemed unconstitutional or otherwise invalid, plaintiffs ask the Court to enjoin defendants from all future "adverse action". This possible future injury is far from actual, concrete, particularized, or imminent. The Court cannot find an injury for the purposes of standing based on a hypothetical possibility of future adverse action

15

Further, in their complaint, Plaintiffs asserted an intention to continue holding Pride festivals in Chief Crisp's district for the foreseeable future. [*Id*. at 13]. However, plaintiffs did not hold a Pride festival in 2024 and made no indication in their complaint as to where future Pride events will take place, meaning that they may not even occur within Chief Crisp's district. To find an injury in fact, the Court would have to ignore that there is no plan to host a Pride festival within Chief Crisp's jurisdiction. If plaintiffs' concerns of a future injury are based on Chief Crisp's past involvement – a decision to pull Maryville Police from providing security and speaking with a venue within his jurisdiction to discuss concerns about a criminal statute – future action of this manner is not possible if a Pride festival is not hosted in his jurisdiction. Ultimately, plaintiffs' alleged future injury is too speculative to be sufficient to establish standing to pursue injunctive relief against Chief Tony Crisp.

B. <u>Plaintiffs have not Sufficiently Plead *Monell* Liability Against Chief Crisp in His Official Capacity.</u>

As previously discussed, plaintiffs have not met the requirements for Article III standing in their claim against Defendant Tony Crisp and as a result, their claims must be dismissed. However, the Court finds it important to discuss Defendant Crisp's argument that plaintiffs have not sufficiently plead a "*Monell*" claim, which is required when suing a government agent in his official capacity. The Court agrees.

*Monell* states that local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, *Monell* tells us that "official-capacity suits … 'generally

16

represent only another way of pleading an action against an entity of which an officer is an agent'." *Id*. at 690 n.55. The Sixth Circuit has reiterated this standard, holding that if the government entity receives notice and has the opportunity to respond, "courts treat an official capacity suit as a suit against the entity." *Curtis v. Breathitt Cnty. Fiscal Ct.*, 756 F. App'x 519 (6th Cir. 2018). In other words, a suit against Defendant Tony Crisp in his official capacity as Maryville Police Chief is effectively a suit against the City of Maryville, which requires a showing that the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated" by Chief Crisp. *Monell*, 436 U.S. 658 (1978).

Plaintiffs have not attempted to make this showing. They make no mention of an unconstitutional policy statement, ordinance, regulation, or decision adopted or promulgated by Defendant Crisp in his official capacity. Without such showing, plaintiffs cannot successfully bring a claim under § 1983 against Chief Crisp and effectively, the City of Maryville.

Because plaintiffs have failed to properly allege a *Monell* claim which would subject Chief Crisp and the City of Maryville to suit under § 1983, and plaintiffs sue Chief Crisp only in his official capacity, their claim must be dismissed.

### C. Dismissal of Claim Against Defendant Tony Crisp

Because plaintiffs have failed to establish standing to bring a claim for injunctive relief and failed to plead a *Monell* claim against Defendant Tony Crisp in his official capacity, their claim against him is **DISMISSED** with prejudice.

### IV. CONCLUSION

For the reasons discussed above, defendants' motions will be resolved as follows. Defendant Ryan K. Desmond's First Motion to Dismiss [Doc. 59] is **DENIED AS MOOT**.

17

Defendant Desmond's Motion to Dissolve Preliminary Injunction [Doc. 59] is **DENIED AS MOOT**. Defendant Desmond's Second Motion to Dismiss for Failure to State a Claim [Doc. 70] is **GRANTED**. Defendant Tony Crisp's Motion to Dissolve Preliminary Injunction [Doc. 67] is **DENIED AS MOOT**. Defendant Crisp's Motion to Dismiss for Failure to State a Claim [Doc. 67] is **GRANTED**.

As a result, plaintiffs' First Amended Complaint [Doc. 64] is **DISMISSED** with prejudice.

An appropriate order will enter.

s/ J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE